83 So.3d 793 (2011)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
Robin CURRAN, Appellee.
Nos. 5D09-1488, 5D09-2091.
District Court of Appeal of Florida, Fifth District.
December 2, 2011.
Rehearing Denied January 6, 2012.
*794 Elizabeth K. Russo, James H. Wyman, and Susan S. Lerner of Russo Appellate Firm, P.A., Miami, and The Turner Law Firm, LLC, Viera, for Appellant.
O. John Alpizar of Alpizar Law LLC, Palm Bay and Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, for Appellee.

ON MOTION FOR REHEARING EN BANC
TORPY, J.
We grant the motion for rehearing en banc, withdraw the panel opinion and substitute this opinion in its stead.
State Farm challenges the final judgment awarding Curran the $100,000 policy limits of her uninsured/underinsured *795 ("UM") motorist policy. Although State Farm raises several issues on appeal, we expressly address only onewhether the trial court erred in finding that there was UM coverage where Curran had breached the contractual obligation to submit to a compulsory medical examination ("CME"). We affirm the trial court, albeit based upon different reasoning.[1] We conclude that Curran breached the insurance contract by failing to attend two scheduled examinations and by filing suit before complying with the CME provision in the contract. However, the breach by Curran did not defeat coverage because State Farm was not prejudiced by the breach.
Curran was injured in a traffic accident involving an underinsured motorist. With State Farm's approval, she settled with the underinsured motorist. Thereafter, on July 19, 2007, through counsel, she requested her $100,000 UM policy limits based upon her estimate that her damages were approximately $3.5 million. She offered to settle the case and release State Farm from an uninsured motorist lawsuit if it tendered the policy limits no later than August 18, 2007. On August 17, 2007, State Farm asked Curran's counsel, Mr. David Alpizar, to contact it to discuss coordinating the date and time for Curran to undergo a CME pursuant to the terms of the policy. That request triggered a series of letters between the attorneys. These letters contain all of the communications regarding the attempts by State Farm to schedule the CME. The record reflects that most, if not all, of the letters were sent via facsimile transmissions.
In response to the August 17, 2007, request to coordinate a date and time for the CME, on August 21, 2007, Mr. Alpizar explained that the time for tendering the policy limits had expired, that he had filed a Civil Remedies Notice with the Department of Insurance and that his client would undergo the CME, but only with a proviso:
conditioned upon your execution of a Stipulation that this will be the only CME she will be required to undergo and that you will waive any further examinations once this matter is in litigation. I would also request that you provide me with a list of physicians you would like to conduct this CME. I would further ask that you provide me with a general time period you would like Ms. Curran to undergo this CME, so as to coordinate same with my client's schedule.
(Emphasis added). That same date, State Farm notified Curran that she had an appointment with Dr. Uricchio in Winter Park scheduled for September 5, 2007, at 10:15 a.m. She was told to notify State Farm as soon as possible if the date was not satisfactory.
On August 28, 2007, Mr. Alpizar notified State Farm of his client's objection to the use of Dr. Uricchio and complained about the lack of coordination of the date. His letter also reiterated his insistence that State Farm execute a stipulation waiving any future examinations. The letter concluded:
Furthermore, we have not received your agreement in our previous request that this be the only CME you will be taking of Ms. Curran in this matter. Please provide this agreement in writing by the end of the business day on Thursday, August 30, 2007, or we will be forced to put this matter into litigation.
*796 On August 30, 2007, State Farm's attorney, Mr. Scott Turner, wrote to Mr. Alpizar advising him of the policy provision governing medical examinations. Mr. Turner indicated that he was unaware of any legal requirement that his client waive future examinations, and he offered transportation arrangements for Curran. He reaffirmed the September 5 appointment and advised Mr. Alpizar that State Farm was attempting to complete the CME so that it could timely respond to the Civil Remedies Notice.
The following day, August 31, 2007, Mr. Alpizar wrote to Mr. Turner that Curran was unavailable on September 5 to attend the CME, without specifying the nature of the purported conflict. He added an objection to the distance Curran would have to travel to see Dr. Uricchio. No alternative dates were proposed. Mr. Alpizar closed:
In light of the above, I would ask that you cancel the CME that was set for September 5, 2007, and provide us with a doctor within reasonable proximity to my client's residence, as well as coordinate future efforts to schedule an examination of Ms. Curran.
State Farm answered that same day:
In the event we cannot move the date of the examination, the doctor selected by State Farm will conduct the same on the date he had available. We will try to see if he has another date available. If you are refusing to have your client attend the medical examination, kindly place that election in writing.
Mr. Alpizar immediately responded by letter dated August 31, 2007. He denied that his client was refusing to undergo a CME. He reiterated that she was not "available," again without specifics, and he requested that the CME be conducted in a closer proximity to Curran's residence. On the subject of the requested waiver, Mr. Alpizar said
In addition, I would further point out that your letter dated August 31, 2007, once again ignored my good faith request that State Farm agree that this be the only examination that Ms. Curran be requested to undergo should this matter proceed to litigation...
(Emphasis added).
On September 5, 2007, a flurry of letters were exchanged by facsimile between counsel beginning with Mr. Alpizar's letter to Mr. Turner proposing a date and time when Curran could be available for a CME. The letter also included a list of conditions, some of which had never been previously mentioned. The letter provided:
Please note that Ms. Curran is available on September 12, 2007 at 9:15 a.m. to undergo a CME, however we feel it would not be unreasonable that Ms. Curran be reimbursed for any expense associated with traveling to north Orlando to attend an examination.
Additionally, please be advised that attendance at this CME is to be conditioned upon the following:
a. No representatives of the insurance company, its attorneys or anyone else acting on their behalf, other than Dr. Uricchio and his office staff, will be present at this examination.
b. A detailed list of any and all examination procedures and processes that Dr. Uricchio intends to perform at this examination be provided prior to the examination going forward.
c. Ms. Curran shall not complete questionnaires, shall not answer questions including questions about the retention of a lawyer or opinions regarding legal liability. The examining physician shall be able to ask questions regarding background information *797 and routine questions that any physician would ask when examining a patient.
d. Ms. Curran will not be subject to any x-rays or other testing of either an invasive or non-invasive nature. Said examination will be an evaluation only and no testing is to be performed.
e. Ms. Curran requests that she be permitted to have any compulsory examination videotaped and/or have a court reporter present during said compulsory examination.
f. Ms. Curran will not be required to bring any materials to the examination including x-rays, MRI scans, CAT scans, or other materials.
g. Ms. Curran requests that she be permitted to have present her attorney or other representative at the examination. Bartell v. McCarrick, 498 So.2d 1379 (Fla. 4th DCA 1986)[sic].
h. Within twenty-five (25) days from the date of the examination, the examining doctor shall prepare a detailed written report setting out all of his findings, including the results of all tests made, diagnosis, and conclusions and provide to our office pursuant to Rule 1.360(b)(1).
i. State Farm agrees that no further examinations be required of Ms. Curran should this matter proceed to litigation or otherwise.
j. We request that the expert be ordered to provide sworn answers to interrogatories permitted by Elkins v. Syken, 672 So.2d 517 (Fla.1996), Allstate v. Boecher, 733 So.2d 993 (Fla. 1999), Springer v. West, 769 So.2d 1068 (Fla. 5th DCA 2000), should this matter proceed to litigation.
k. State Farm be responsible for notifying the examining doctor of the terms of this objection and any order entered pursuant thereto.
Once again, please do not misinterpret the aforementioned position as my client refusing to undergo a CME, but rather is asserting protected rights that she is provided under the law. Please confirm agreement to the above terms by the end of the business day on Thursday, September 6, 2007, or we will be left with no alternative but to put this matter into litigation.
I look forward to your anticipated cooperation by the aforementioned deadline.
(Emphasis added).
Mr. Turner's response reiterated that the CME was a term in the insurance contract and that it would be conducted in accordance with "routine medical examinations." Mr. Turner agreed that Curran could have counsel and a court reporter present during the CME and emphasized that he would not be present. Mr. Alpizar replied:
Ms. Curran has made every effort in order to cooperate with her insurance company for a CME that has been requested. However, despite numerous requests, it is very evident that State Farm is acting extremely unreasonable, and further failing to cooperate in good faith with their insured. Accordingly, we are left with no alternative but to file a lawsuit in the matter, and you may seek your CME of Ms. Curran in accordance with the Florida Rules of Civil Procedure. It is unfortunate that State Farm has failed to return Ms. Curran's cooperative efforts.
In turn, Mr. Turner replied:
It is obvious that you have now advised your client to fail to comply with the terms and conditions of the subject policy. Second, you intend to fail to comply with the Civil Remedy Notice requirement. Finally, you intend to fail to comply *798 with Florida law regarding medical examinations. As such, I trust you have made your client aware of the choices you have now made on her behalf and how that will effect [sic] her rights and benefits under the subject policy.
The examination is set and should your client chose [sic] to comply with the policy, she can attend the examination.
The next day, September 6, 2007, Mr. Alpizar wrote back that
my client has not failed to comply with any of the terms or conditions in the subject policy. She has made every effort to cooperate in good faith with State Farm in attending a[sic] "examination," a term of art which is ambiguous and undefined under the subject policy, while at the same time protecting her personal rights. She has made several efforts to communicate her willingness to submit to a CME with both your office as well as the adjuster with State Farm.
Recently, she advised that she would attend a CME on September 12, 2007 at 9:15 a.m. at a location an hour and a half from her residence. She also made a few reasonable requests, including compensation for her travel, a description of the procedures that State Farm's hired physician intends to perform, assurance that there would be no "testing" done during this "examination" and assurance that her rights would be protected from being requested to undergo future examinations. In fact, Ms. Curran continues to agree to attend the scheduled CME, under the requested guidelines set forth in my prior correspondence, further demonstrating her willingness to cooperate with State Farm.
Astonishingly, Ms. Curran's efforts to cooperate with State Farm have been outright ignored, and every single response to her requests have gone completely unaddressed. This is further evidence of State Farm failing to act in good faith to settle a claim with their insured. I would suggest that you please re-read Florida Statutes, as my prior letter in no way fails to comply with the civil remedies notice requirements, as well as any Florida law whatsoever regarding medical examinations. I welcome you to direct me to any authority that supports the unfounded contentions set forth in your letter.
Taking into account the tenor of your most recent letter, I trust that you have made your client aware of the ramifications of an unjustified denial of benefits to an insured.
In response, State Farm arranged for an examination with Dr. Uricchio on September 12, 2007, at 9:15 a.m., the date and time previously requested by Mr. Alpizar.
On September 10, 2007, Curran filed suit against State Farm. Mr. Alpizar provided a copy of that complaint to Mr. Turner and, in an accompanying letter, stated:
As this matter is now in suit, and in light of State Farm's prior lack of cooperative efforts with their insured regarding the CME, we are requesting that the examination presently scheduled for September 12, 2007 at 9:15 a.m. with Dr. Uricchio be canceled. Furthermore, in the spirit of cooperation, we would ask that you please utilize the appropriate means for requesting a CME of Ms. Curran available under the Florida Rules of Civil Procedure, so that Ms. Curran can continue her cooperative efforts with State Farm.
On September 13, 2007, Mr. Turner wrote to Mr. Alpizar informing him that State Farm continued to require compliance with all terms and conditions of the policy and that Curran's failure to appear for the September 12 CME with Dr. Uricchio constituted a breach of the terms of *799 the policy. On September 18, 2007, State Farm's representative sent Curran a reservation of rights letter, warning her that State Farm may have no duty to pay because "it is questionable whether there has been compliance with the provision of the policy requiring the assistance and cooperation of the insured, by reason of allegations or evidence of insured's refusal to be examined by physicians chosen and paid by us as often as we reasonably may require."
On September 19, 2007, Mr. Alpizar wrote to Mr. Turner, stating in pertinent part:
As you are aware, we have recently filed a Complaint in this matter so as to provide safeguards and protections for our client in governing any CME State Farm is requesting. Unfortunately, we have been left with no other option but to proceed in this fashion due to State Farm's unwillingness to stipulate to certain guidelines governing a CME. In light of the above, Ms. Curran is continuing her efforts to cooperate with State Farm in submitting to a CME. In an attempt to afford any additional information they feel necessary in evaluation of this case, we are writing to inquire as to whether State Farm would like to have Ms. Curran undergo a CME within the 60-day time period following filing of the Civil Remedies Notice as related to this matter.
Enclosed with this correspondence, I have attached a Stipulation that my client would agree to governing a CME at a mutually convenient time for both parties. In my experience, the stipulated conditions are very well received by courts and generally found to be considered extremely reasonable in setting forth conditions governing compulsory examinations of a Plaintiff.
Mr. Turner answered on September 21, 2007. He noted that Curran had failed to appear at the scheduled CME and advised that State Farm would let a court decide "if your client's failure to cooperate and failure to comply with all policy terms, conditions, limits, provisions and applicable Florida law affects coverage under the provisions which you now seek benefits. I can only presume that your September 18, 2007 inquiry is an effort to seek fees for a claim wherein you had advised your client to refuse to cooperate and refuse to comply with policy terms."
On September 27, 2007, State Farm answered the complaint and asserted as an affirmative defense that there was no coverage due to Curran's breach of the policy provision regarding the medical examination. State Farm, thereafter, moved for summary judgment on the coverage issue. Its position was that Curran had breached the policy by failing to appear and submit to a medical examination and that State Farm was thus entitled to decline coverage as a matter of law.
Curran filed her own motion for summary judgment, contending that nothing in the policy required her to submit to a medical examination in a county other than the one in which she resides. She denied refusing to submit to a medical examination and asserted that she had made reasonable requests "to protect her own personal interests governing a physical examination of her body" and that her requests had been ignored by State Farm. Curran asserted that, at worst, she had filed her suit prematurely.
During the hearing on both motions, the attorneys advised the court that all of the facts pertaining to the issues raised were contained within the aforementioned letters and that the disputed issue was one of law. Following the hearing, the trial court entered its order of summary judgment in *800 favor of Curran. The court determined that State Farm's request to Curran for a CME was "not unreasonable." However, it also determined that Curran's requested conditions were "not unreasonable," except for the condition that State Farm waive further examinations. The trial court expressed uncertainty about the reasonableness of that request. It concluded: "There appeared to be no meeting of the minds of any of the terms and conditions that were requested by the Plaintiff, so the Court finds as a matter of law the Plaintiff did not fail to appear for the examination as asserted by State Farm."
The ensuing litigation culminated in a jury award of $4,650,589 in damages to Curran. The trial court entered a judgment against State Farm for the $100,000 UM policy limits. Post-trial orders were entered awarding some costs and attorney's fees but reserving jurisdiction to award additional costs and fees.[2] This appeal timely ensued.
We begin our analysis with the policy language. The policy lists a number of duties the claimant must comply with, including the duty to:
be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the person upon written request. The person or his or her legal representative if the person is dead or unable to act shall authorize us to obtain all medical reports and records.
Curran concedes that, under the terms of the policy, she was required to attend a medical examination. She contends that she did not breach this duty because she never refused to attend the examination but only conditioned her attendance upon reasonable conditions. The trial court accepted this argument. We conclude that the trial court incorrectly focused on the reasonableness of Curran's proposed conditions, rather than the reasonableness of State Farm's actions. The trial court relied upon U.S. Security Insurance Co. v. Cimino, 754 So.2d 697 (Fla. 2000). That case, however, addressed a personal injury protection ("PIP") claim. There, both the insurance contract and PIP statute limited the imposition of the penalty for failure to attend a CME to situations where the insured "unreasonably refuses to submit" to a CME. Thus, the appropriate focus in that case, as in all PIP cases, was on the reasonableness of the insured's actions. Here, by contrast, no such language appears in the contract or in any statute.
Even under the analysis of the trial court, however, because Curran did not act reasonably in insisting that State Farm abandon a contractual right as a precondition to an examination, we conclude that Curran breached the contract. Under the terms of the policy, Curran was obligated to attend a CME upon request. Implicit in the policy was the condition that the request be reasonable in time, location and manner. State Farm's requests were all patently reasonable. Initially, State Farm simply asked to coordinate a date and time for a CME. Instead of offering a date, Curran insisted on a "condition" that State Farm waive any further examinations. This proposed condition unreasonably sought a waiver of a contractual right. The contract expressly permits future examinations under reasonable circumstances. Thereafter, State Farm was well within its right to unilaterally schedule the examination, especially given the time constraints *801 it had under the pending Civil Remedies Notice and the impending threat of a claim for bad faith. Even then, State Farm offered to adjust the date if needed to accommodate Curran. Again, instead of offering alternative dates, Curran responded by objecting to the examining doctor, without specificity, and in contravention of the contract provision giving State Farm the right to choose the doctor. Curran also continued to insist that State Farm waive its right to require future examinations. To ameliorate the location of the CME, State Farm promptly offered to provide transportation to the examination. Nevertheless, not until September 5, 2007, the date of the scheduled CME, did Curran finally propose an alternative date for an examination. This time, in addition to insisting that State Farm waive its right to future examinations, Curran included a laundry list of additional "conditions" that State Farm would have to agree to before Curran would submit to the CME. Among the additional conditions were Curran's receipt, prior to the examination, of a "detailed list of any and all examination procedures and processes that Dr. Uricchio intends to perform at this examination," and the presence of Curran's counsel and a court reporter at the examination. State Farm did not object to the presence of counsel or a court reporter at the examination. It advised that the CME would be conducted in accordance with routine medical examinations, and rescheduled the examination to the date proposed by Curran. Instead of attending the rescheduled examination, Curran filed suit.
Under these undisputed facts, we have no reticence in concluding that Curran breached the contract. The contract conferred upon State Farm the right to schedule an examination with a physician chosen by State Farm. It also gave State Farm the right to conduct more than one such examination, if reasonably necessary. It was not necessary that State Farm agree to any proposed condition proffered by Curran (even if reasonable from the standpoint of the insured), only that State Farm act reasonably. Here, State Farm's requests were at all times reasonable. Operating within an accelerated time frame, State Farm made every reasonable effort to set a date and time convenient for Curran. It offered transportation, acquiesced in Curran's request that counsel and a reporter be permitted to attend and agreed that counsel for State Farm would not attend.[3] Conversely, Curran was uncooperative in scheduling the examination, *802 insisted on at least one unreasonable condition and set up a moving target with evolving demands. Although proffering conditions might not be a breach of the contract, an insured has no contractual right to unilaterally change the contract terms under the guise of proffered conditions.
Our conclusion that a breach occurred does not end our labor, however. While the policy provides that no right of action against the insurer exists until all policy terms have been met, nothing in the language of the policy imposes a forfeiture of benefits in the event of a breach of the duty to submit to a CME. The CME requirement is grouped with other duties (conditions subsequent) a claimant has when an accident occurs and a claim is asserted. Those other duties include, for example, the duty to notify police within 24 hours, report the claim within 30 days, allow an inspection of the vehicle, give an examination under oath and deliver suit papers to the insurer "at once." In the absence of policy language imposing a penalty or forfeiture in the event of non-compliance with these provisions, we think the remedy must be proportionate to the harm that results from the breach, just as it is in other contractual disputes. Had the alleged breach here involved the failure to report the accident to the police within 24 hours or to deliver the suit papers "at once," in the absence of resulting prejudice, we would glibly dismiss the breach as inconsequential. The same prejudice analysis should apply here.
We think this conclusion is amply grounded in the decision of our high court in Bankers Insurance Co. v. Macias, 475 So.2d 1216, 1218 (Fla.1985). There, our high court concluded that neither the failure to timely report a claim, nor the breach of the duty to cooperate, gives rise to the automatic forfeiture of insurance benefits, absent prejudice to the insurer. The instant case is analogous in that the contractual provision here is of the same ilk as the claim notice provision discussed in Macias. It is physically grouped together in the same section of the policy that contains the claim notice provision and serves the similar purpose of permitting the insurer the opportunity to adequately investigate the claim. It is also analogous to and overlaps the insured's duty to cooperate (the other provision addressed in Macias) in that it affords the insurer the opportunity to obtain evidence from the insured, an express duty under the cooperation clause of this policy.[4] Here, in fact, Curran's breach was treated by State Farm as a breach of Curran's duty to cooperate, in its September 18, 2007 reservation of rights letter. Whether the CME clause is more analogous to a claims notice provision or a cooperation clause bears only on who has the burden on the prejudice issue, not the materiality of a resulting prejudice analysis. In any event, our high court recently made clear that the burden to plead and prove a breach of a CME clause is on the insurer. Custer Med. Ctr. v. United Auto. Ins. Co., 62 So.3d 1086 (Fla.2010).
In Custer, the court addressed the consequence of an insured's failure to attend a CME in the context of a PIP policy and claim. Custer is not directly applicable here because PIP policies incorporate a PIP statute providing a penalty for failure to attend a CME. Nonetheless, the court's discussion of the nature of a CME provision and the burden of proof of breach is applicable. A CME provision is a "condition subsequent," the non-occurrence *803 of which is an affirmative defense that the insurer has the burden to plead and prove. Id. at 1097-99; accord 6 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 81:19 (3d ed. 2011) ("[C]onditions subsequent are those which pertain to the contract of insurance after the risk has attached ... and are matters of defense to be pleaded and proved by insurer."). Thus, to avoid liability under the insurance policy based on non-compliance with the CME clause, it was essential that State Farm plead and prove a material breach, which means a breach causing prejudice.
Reversing the scenario affords added perspective on this issue. Assuming, hypothetically, that an insurer were to compel an unreasonable number of examinations, such a breach of the CME clause by the insurer would not justify an automatic forfeiture of the policy limits, without regard to resulting injury or damage. See Eugene R. Anderson et al., Draconian Forfeitures of Insurance: Commonplace, Indefensible, and Unnecessary, 65 Fordham L.Rev. 825, 849 (1996) (addressing the hypocrisy of imposing forfeitures by insurers upon breaches with no resulting damage).[5]
The breach of a condition subsequent in an insurance policy may result in a suspension or termination of a contract, depending upon the nature of the breach and the language of the contract. U.S. Aviation Underwriters, Inc. v. Sunray Airline, Inc., 543 So.2d 1309, 1311 (Fla. 5th DCA 1989); see Russ, supra at § 81:19 (effect of breach of non-occurrence of condition subsequent dependant on language of contract). Here, the contract is silent regarding the non-occurrence of any of the claimant's obligations when presenting a claim, except that a different section of the contract precludes any action against the insurer "until" the claimant complies with the terms of the contract.[6] The use of the term, "until" is consistent with an interpretation that a breach of this nature only suspends performance by the insurer and may be cured by the insured. When a presuit request for a CME is made, thereby invoking the "until" language, the combination of these clauses establishes a condition precedent to maintaining an action, which, if raised as an issue, may be cured under most circumstances.[7]See Holding Elec., Inc. v. Roberts, 530 So.2d 301 (Fla. 1988) (condition precedent in mechanics lien statute may be performed after suit filed and alleged by amended complaint; it is not bar to recovery); Commercial Carrier Corp. v. Indian River Cnty., 371 So.2d 1010, 1022 (Fla. 1979) (condition precedent *804 for pre-suit notice may be cured by amended complaint after compliance); Wright v. Life Ins. Co. of Ga., 762 So.2d 992, 993 (Fla. 4th DCA 2000) (failure to provide proof of death to life insurance company, a condition precedent, was curable; action abated pending compliance with proper procedure).
Here, although Curran prematurely filed suit in contravention of the contract, State Farm never raised this argument, presumably because it would only result in the abatement of the claim, instead of a complete defense. Had State Farm raised this argument, the trial court could have ordered the action abated, necessitating compliance with the CME clause before either party was burdened with the expense of further litigation. Instead, State Farm consistently maintained that the breach excused further performance of the contract. Its reservation of rights letter asserted a complete defense and denied coverage. Its affirmative defense asserted a complete defense to coverage, rather than address the premature nature of the suit:
25. Defendant alleges and avers that the Plaintiff refused to attend scheduled Medical Examination(s) as required by the subject policy and, as such, has breached the subject policy terms, conditions, limits, provisions and applicable Florida law, thereby preventing further recovery under the policy.
It deferred the opportunity to obtain a post-suit CME until the coverage issue was determined. Finally, its motion for summary judgment merely sought a judgment in its favor on the merits. In any event, State Farm does not now seek a do-over, which would serve no legitimate purpose at this juncture.
In its summary judgment motion and here, State Farm primarily relied upon two decisions of our sister courts, both of which we think should be rejected because they were incorrectly decided. The first case, De Ferrari v. Government Employees Insurance Co., 613 So.2d 101 (Fla. 3d DCA 1993), mistakenly conducted its analysis under the PIP statutory scheme. This is significant, because the PIP statute contains a penalty for an unreasonable refusal to attend a CME. It imposes a bar on the recovery of "subsequent personal injury protection benefits." § 627.736(7)(b), Fla. Stat. (2010). There is no similar statute relating to UM claims. Although on rehearing the De Ferrari court corrected its opinion to clarify that it involved solely a claim for UM benefits, not PIP benefits, it never deleted the references to the PIP statute, and the cases it relied upon for its conclusion were PIP cases. See Allstate Ins. Co. v. Graham, 541 So.2d 160 (Fla. 2d DCA 1989); Tindall v. Allstate Ins. Co., 472 So.2d 1291 (Fla. 2d DCA 1985); Griffin v. Stonewall Ins. Co., 346 So.2d 97 (Fla. 3d DCA 1977).[8]
Our second basis for rejecting De Ferrari is that it erroneously rejected the Macias prejudice analysis based upon a false legal premise. In distinguishing Macias, the De Ferrari court said:
We conclude that prejudice is not at issue when an insurer's reasonable request for an I.M.E. is refused by an insured. The Macias case in no way created a new duty to establish prejudice, where none previously existed. Here, the insured failed to meet a condition precedent to coverage and *805 accordingly GEICO's motion for summary judgment was properly granted.
613 So.2d at 103 (emphasis added; citation omitted). The premise upon which De Ferrari based its conclusionthat a CME clause is a condition precedent to coveragewas squarely rejected in Custer, 62 So.3d at 1099-1100 (CME exam not condition precedent to coverage). Unlike our sister court, we do not think that we have created a "new duty" under the contract. The contract establishes a duty without specifying the consequences when that duty is breached. Our function is to determine whether, under established contract principles, a breach of that duty results in a forfeiture of benefits, irrespective of resulting prejudice.[9]
State Farm also placed heavy reliance on Goldman v. State Farm Fire General Insurance Co., 660 So.2d 300 (Fla. 4th DCA 1995), which involved the refusal to submit to an examination under oath ("EUO") required by the terms of a homeowner's policy. Like De Ferrari, it relied upon what it deemed to be the "analogous cases" from other districtsGraham, Tindall, and Griffinall of which were PIP cases. Nevertheless, even Goldman ultimately based its holding on a finding of prejudice to the insurance company. It expressed reluctance to impose a forfeiture and considered remanding the case for the insured to comply with the EUO requirement. Because of the lapse of time, however, it concluded that the insurance company had been prejudiced:
Since forfeitures are not favored, this court has considered the possibility of remanding the case with directions that appellants submit to an examination under oath. However, we decline to exercise this option since any belated compliance by appellants more than two (2) years subsequent to the loss and the commencement of suit would satisfy neither the spirit nor intent of the policy conditions at issue.
Goldman, 660 So.2d at 305.
We also view Goldman with some skepticism because it is wedged between two conflicting panel decisions from the same court. In Leasing Service Corp. v. American Motorists Insurance Co., 496 So.2d 847 (Fla. 4th DCA 1986), an earlier panel of the same court concluded that an insured's failure to submit to an EUO would not bar recovery in the absence of prejudice. And recently, the Fourth District in Wapnick, without mentioning Goldman, remanded a case with instruction that an insured be permitted to submit to a CME after disputing the distance involved. Wapnick, 54 So.3d 1065. There, the insured, who lived in Vero Beach, had been directed to attend a CME in West Palm Beach. Id. at 1066. The insured filed a declaratory judgment action to determine if she needed to attend an out-of-county CME under the UM policy. Id. at 1067. The trial court held that the insured had breached the contract and denied coverage. Id. On appeal, the Fourth District affirmed the order to the extent that it acknowledged that the insured must attend the CME, but remanded the case to permit the insured to attend the CME. Id. If the refusal was a breach defeating coverage, following Goldman, the court would *806 not have remanded the case but instead affirmed the trial court. In any event, Goldman clearly represents only one of two divergent views on this point. See Russ, supra at § 196:29 (addressing the divergent views on this issue). We think the view we have taken is the better reasoned view and the view that is consistent with the approach taken by our high court since it decided Tiedtke v. Fidelity & Casualty Co. of New York, 222 So.2d 206, 209 (Fla. 1969) (noting divergent views across country, but determining to adopt view that requires showing of prejudice).
Kazouris v. Government Employees Insurance Co., 706 So.2d 960 (Fla. 5th DCA 1998), also relied upon by State Farm, is a one-sentence opinion citing De Ferrari for the proposition that an "insurer can insist on an [IME] when the insured makes a" UM claim. This case, by its express limitation, is not a wholesale endorsement of the De Ferrari holding. But if it is, we recede from it for the reasons given herein. Finally, Stringer v. Fireman's Fund Insurance Co., 622 So.2d 145 (Fla. 3d DCA 1993), is likewise a one-sentence opinion that fails to identify the type of policy or the policy language.
Having concluded that prejudice was an issue and that the burden was on State Farm to plead and prove that Curran's breach of the duty to submit to a CME defeats coverage, we conclude that State Farm failed to meet its burden and, as the issue was framed and presented to the trial judge, he properly determined that no forfeiture of coverage had occurred. State Farm made no assertion of prejudice in its pleadings or arguments, instead placing total reliance on De Ferrari and Goldman. Even had State Farm argued prejudice, the record refutes any such allegation, at least to the extent that it would affect entitlement to the UM contract benefits. Immediately upon filing suit (seven days after the scheduled examination), Curran offered to submit to a medical examination pursuant to Florida Rule of Civil Procedure 1.360 (also well before the expiration of the time period under the Civil Remedies Notice).[10] State Farm declined Curran's offer, electing instead to defer an examination until after the court first decided "if your client's failure to cooperate and failure to comply with all policy terms, conditions, limits, provisions and applicable Florida law affects coverage under the provisions which you now seek benefits." After the lower court ruled, the record reflects that Curran submitted to a CME with Dr. Uricchio. State Farm elected not to call Dr. Uricchio as a trial witness. There is no indication that the validity of the CME was affected by the short lapse of time attributable to Curran or that the rule 1.360 examination was materially different from the CME State Farm would have performed under the contract. The effect of Curran's breach was clearly inconsequential as it pertained to the merits of her claim for UM benefits. See Tiedtke, 222 So.2d at 209 (unnecessary to remand case for determination of prejudice where record amply establishes no prejudice to insurer).
We do not intend this decision to mean that the breach of contract by Curran cannot be considered in the context of any subsequent action for bad faith. We have considered and rejected State Farm's other *807 points on appeal without further comment. We acknowledge conflict with De Ferrari and Goldman. We also certify the following question to the supreme court as one involving great public importance:
When an insured breaches a CME provision in an uninsured motorist contract, (in the absence of contractual language specifying the consequences of the breach) does the insured forfeit benefits under the contract without regard to prejudice, or does the prejudice analysis described in Bankers Insurance Co. v. Macias, 475 So.2d 1216, 1218 (Fla.1985), apply? If prejudice must be considered, who bears the burden of pleading and proving that issue?
AFFIRMED.
GRIFFIN, EVANDER, and COHEN, JJ., concur.
ORFINGER, C.J., concurs and concurs specially with opinion.
MONACO, J., concurs and concurs specially with opinion.
LAWSON, J., concurs and concurs specially with opinion in which TORPY, J., concurs.
SAWAYA, J., dissents with opinion.
PALMER, J., dissents with opinion.
ORFINGER, C.J., concurring.
I concur with the majority opinion. However, I must concede that the Florida Supreme Court's decision in Bankers Insurance Co. v. Macias, 475 So.2d 1216 (Fla.1985), leaves me with some doubt concerning which party bears the burden on the issue of prejudice.
In Macias, the supreme court held that the party bearing the burden of demonstrating prejudice, or the lack thereof, shifts depending on the nature of the contractual duty breached. Specifically, the court wrote:
[C]ontractual duties are imposed on the insured for different reasons and must be considered separately. The notice requirement enables the insurer to conduct a timely and adequate investigation of all circumstances surrounding an accident. The cooperation requirement, on the other hand, arises to prevent fraud and collusion in proceedings to determine liability once notice has been given.
In Florida different presumptions arise depending on which duty has been breached. If the insured breaches the notice provision, prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice. In a breach of cooperation clause case, however, the insurer must show a material failure to cooperate which substantially prejudiced the insurer.
475 So.2d at 1217-18 (internal citations omitted). The court concluded that "[t]he burden should be on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts and to examine the insured. This rule should apply to claims under a PIP policy just as well as to claims under other policies." Id. at 1218 (emphasis added).
If, as the supreme court stated in Macias, depriving an insurer the opportunity to examine an insured constitutes the breach of a notice provision, then Macias appears to suggest that prejudice is presumed, and that the insured must demonstrate the lack of prejudice. However, that is not entirely clear based on subsequent cases. If the supreme court takes up our certified question, this issue can be resolved.
Finally, I agree with Judge Monaco's concurring opinion that the insured's pre-suit *808 strategy was a poorly disguised setup for a bad faith claim against State Farm and not a meaningful effort to resolve the matter without suit. There is no doubt that insurance companies sometimes engage in bad faith conduct, and, in these cases, a plaintiff is certainly justified in pursuing a bad faith claim. But justice is not served by encouraging the sort of gamesmanship that occurred here. That sort of game playing is appropriate for a casino, not a courtroom.
MONACO, J., concurring.
I fully concur with the opinion of the majority. I write only because I am very disturbed by the actions of plaintiff's counsel below. It is not because I believe that counsel did anything unethical. Rather it is because I am concerned with the level of professionalism shown by him. I do not know Mr. Alpizar, but it appears from his approach to this case that he is a zealous advocate. This makes the actions he took on behalf of his client all the more disappointing.
The entire letter and e-mail dance orchestrated by plaintiff's counsel had as its rather transparent motive the goal of putting the insurance carrier in a position where it could not offer up the policy limits prior to suit, unless it did so without having a medical consultation that it had confidence in. This was about as thinly disguised a bad faith trap as is imaginable. So what's the harm? Beyond the fact that the carrier was denied the opportunity to offer its policy limits in advance of suit, and thus to avoid a potential bad-faith claim, it put the civil justice system in general, and the defendant in particular, through a completely unnecessary trial. Moreover, since the recovery was 46 times the policy limits, a bad-faith suit is undoubtedly on the horizon. We ought not to encourage such behavior.
There is a difference between ethical and professional. I have always conceived of ethics as the minimum standard, the floor level, of behavior that should be expected of a lawyer. Professionalism is something beyond that. Although the advocacy of counsel for the plaintiff was zealous, "zeal cannot give way to unprofessionalism...." See Thomas v. City of North Las Vegas, 122 Nev. 82, 127 P.3d 1057, 1067 (2006). There is a divide that must be recognized. Being professional means acting with civility, fairness, grace and honor, and in the best interests of our system of justice. It's the kind of thing that makes a kid look up and say, I want to be a lawyer. I hope no kid wants to emulate what we saw in this case.
LAWSON, J., concurring.
I fully concur with the majority opinion. I write primarily to address some of the points made by the dissent.
State Farm was the master of its own contract. It could have expressly addressed the consequence of a failure to attend a CME but did not. In one section, the policy simply lists the duties of a person making a claim for UM benefits. The list includes providing details about the claim; submitting to an examination; answering questions under oath; reporting the accident within 24 hours; allowing the vehicle to be inspected; and forwarding suit papers "at once." The only language in the policy that addresses the potential consequences of a failure to abide by these policy terms is in a different section of the policy and it merely prohibits the initiation of a suit "until all the terms of the policy have been met." This hardly supports the position taken by State Farm and the dissent that any non-compliance with any of these listed duties, including the CME provision, results in an automatic forfeiture of *809 insurance benefits, irrespective of whether there is resulting prejudice.
The dissent's conclusion that Curran engaged in "a scheme ... to establish a bad faith action against State Farm so she could recover in excess of the policy limits" is unsupported by the record and irrelevant to the issues that we confront in this action. State Farm never alleged any such purported scheme, and no factual findings of this nature were made by the judge or jury. The judgment we are addressing awards the policy limits based upon breach of contract. One's motive for breaching a contract is not relevant because contract damages are not supposed to be punitive in nature. Even when a contract expressly authorizes a penalty for breach, it is generally unenforceable.
Whether the CME provision is properly labeled a condition precedent (as the dissent contends) or a condition subsequent (as it is labeled in Custer Med. Ctr. v. United Auto. Ins. Co., 62 So.3d 1086 (Fla. 2010)), the burden is on the defendant insurer to plead non-compliance with specificity and particularity and to prove what is pleaded because it is a matter of avoidance in the nature of an affirmative defense. Id. at 1096-97. The argument of State Farm's counsel cited by the dissent is neither a pleading nor is it evidence. Even if it were, it was nothing but a vague suggestion of possible prejudice. All that State Farm pleaded here was that the failure to attend the CME defeated coverage. Despite the specificity requirement for pleading the non-occurrence of conditions precedent or subsequent, no assertion was advanced in any pleading that the suit was premature. Had such an assertion been advanced, it could have been cured. When State Farm moved for summary judgment, it cited and relied upon De Ferrari v. Government Employees Insurance Co., 613 So.2d 101 (Fla. 3d DCA 1993), a case that plainly held: "We conclude that prejudice is not at issue when an insurer's reasonable request for an I.M.E. is refused by an insured." Id. at 103. Contrary to the assertion by the dissent, State Farm has had every opportunity to argue prejudice, but its position throughout this litigation, including this appeal, is that it need not prove prejudice. Simply put, State Farm put all its eggs in the De Ferrari basket.
The suggestion by the dissent that State Farm would have tendered policy limits if it just had the opportunity to verify Curran's condition before suit was filed is likewise not supported by the present record. In fact, this is a case where State Farm never conceded liability of the tortfeasor. It maintained in the trial court and on appeal that Curran was comparatively negligent in this rear-end collision. The record also reflects that State Farm did not seek to schedule the CME until one day before the expiration of Curran's demand for policy limits. Whether State Farm could have obtained the examination results before the statutory notice expired and whether Dr. Uricchio would have confirmed the severity of Curran's injuries is impossible to discern from the present record. Dr. Uricchio's report is not in the record and, although State Farm announced that Dr. Uricchio would testify at trial, on the last day of trial, counsel announced without explanation that he would not be called. Thus, we can only speculate about what Dr. Uricchio concluded. But even assuming that State Farm would have paid the claim before the lawsuit was filed, the hypothetical prejudice identified by the dissent is its potential exposure beyond the limits of the policy, which is outside the scope of this proceeding and expressly unaffected by the holding of this case. The final judgment on review is for the limits of the policy. No action for bad faith is before us, and these issues are best *810 addressed if and when any such action is filed.
The dissent finds "very troubling" this court's conclusion that a breach of a CME is not a material breach. That is not the holding of this case. All that the majority holds is that the breach that occurred here was not material because it did not prejudice State Farm to the extent that it was ordered to pay policy limits. The dissent's position that any breach of a CME provision is a material breach, resulting in a forfeiture of benefits, is equally troubling to me. I think the best approach to contractual breaches of this nature is a measured one that correlates the damages to the prejudice caused by the breach. Because this is a matter of avoidance, as a matter of pleading, the burden is and should be on the insurer to show prejudice, rather than imposing the burden of disproving prejudice on the insured. It also makes practical sense to allocate the burden in this manner because the insurer is in the best position to demonstrate prejudice.
TORPY, J., concurs.
SAWAYA, J., dissenting.
This case is a prime example of how a clever litigant can game the legal system and get away with it. The record reveals that appellee Robin Curran willfully and materially breached the insurance policy State Farm issued to her by twice refusing to attend a scheduled compulsory medical examination as required under the policy. Curran breached the policy as part of a scheme she employed to establish a bad faith action against State Farm so she could recover in excess of the policy limits. Her damages far exceeded the $100,000 policy limits, as is evident from the multi-million dollar verdict she received from the jury. Attending the scheduled compulsory medical examination (CME) would have revealed to State Farm the extent of her injuries and risked its pre-trial tender of the policy limits, thus precluding a bad faith action. During the hearing held in March 2008 on the summary judgment motions filed by both parties regarding the effect of Curran's breach of the policy, the lawyer for State Farm explained to the court the trap in which he found himself and his client:
MR. TURNER: I tell you the problem you've got. If somebody's got legitimate RSDand say what you will about Joe Uricchio, but he is probably the biggest proponent for RSD. He gives the most seminars that I've ever heard on RSD for plaintiffs.
Quite frankly, the plaintiff had already been referred to Joe Uricchio by Dr. Todd Jaffe back in March of 2007 to go. In any event, it didn't take place.
My concern obviously was a civil remedies notice is sitting out there. They then file a lawsuit when they don't show up. We requested again, they objected again to the lawsuit. We indicated that we couldn't get an IME with Uricchio before the civil remedies notice. Therein lies the rub.
The reference in the third sentence in the last paragraph to "objected again to the lawsuit" is an obvious reference to the attempt on the part of State Farm shortly after the suit was filed to obtain an examination of Curran pursuant to a notice for examination under rule 1.360, Florida Rules of Civil Procedure, on November 20, 2007. Incredibly, Curran objected to that examination and actually objected to, among other things, Dr. Uricchio and the location, after she had previously agreed to both prior to her failure to appear at the second scheduled pre-suit examination.
This is how Curran employed her scheme. After Curran was involved in the *811 automobile accident, she settled with the underinsured tortfeasor and sought to recover her UM benefits from State Farm. The policy State Farm issued to Curran contained a CME provision that required:
Any person making claim ... under the no-fault, medical payments, uninsured motor vehicle and death, dismemberment and loss of sight coverages shall... be examined by physicians chosen and paid by us as often as we reasonably require....
When Curran notified State Farm of her intent to seek UM benefits, State Farm requested that Curran appear for a CME pursuant to the policy provisions, and further requested Curran to contact it so it could schedule the examination. This request prompted a reply from Curran's attorney that Curran would attend an examination provided State Farm waive its rights to any further examinations. This demand was an obvious attempt to have State Farm waive not only its rights under the CME provisions of the policy, but also its rights under rule 1.360, Florida Rules of Civil Procedure, to obtain a physical examination of Curran in the event suit was filed. Curran's attorney made it very clear in this reply that he would be filing a Civil Remedies Notice with the Department of Insurance, which is the precursor to a bad faith action. Curran did file the notice. State Farm did not agree with the waiver condition and specifically replied that it knew "of no case law that supports that position."
A flurry of correspondence went back and forth between the two attorneys, with Curran always demanding that State Farm waive its rights under the policy for any further examinations. State Farm made other attempts to schedule the examination, and each time Curran responded with the waiver demand. That was the only demand that Curran made until the parties finally agreed on the examination date, time, place, and the doctor who would perform the examination. It was at that point that Curran not only demanded the waiver condition, but also came up with numerous other demands that she insisted State Farm agree to in exchange for her attendance at the examination. A few days before the scheduled examination date, Curran filed her suit and failed to show up for the examination.
Judge Lawson argues in his concurring opinion that the conclusion that Curran employed a scheme to establish a bad faith action against State Farm is unsupported by the record. I totally reject that argument. Not only does the evidence in the record that I have previously discussed establish what Curran did, her own lawyer told State Farm that he was going to establish a bad faith action and then set out to do it. In his letter to State Farm dated August 21, 2007, Curran's lawyer told State Farm that he would be filing a Civil Remedies Notice with the Department of Insurance, which is a prerequisite to a bad faith action under section 624.155, Florida Statutes, and the record reflects that he did file the notice. Curran's lawyer also revealed in that letter that he would establish his bad faith action by insisting that Curran would not attend the required examination unless State Farm accepted her unreasonable and unacceptable demand that it waive its rights under the CME provisions of the policy. The record further reveals that Curran filed a Proposal For Settlement pursuant to section 768.79, Florida Statutes, and rule 1.442, Florida Rules of Civil Procedure, for $1,000,000, which is ten times the amount of the policy limits, to establish a basis for fees in the bad faith action and the final judgment we review provides that it "specifically reserves jurisdiction to amend this Final Judgment or enter a separate Judgment after the determination of costs, interest, *812 attorney's fees and any pending claims for bad faith." Even the majority opinion recognizes the bad faith action Curran created, acknowledges that the waiver demands she made were improper and unreasonable, and further acknowledges that Curran's refusals to attend the scheduled examinations constitute a breach of the policy. I cannot conceive of any factual scenario that could more clearly establish a scheme to unfairly manipulate an insurer to set up a bad faith claim, and I certainly do not think that judges should discard common sense when analyzing the evidence and record in any case. In fact, it is evident that at least some in the majority, to their credit, recognize the inherent unfairness of what Curran did and that is why the majority opinion states that "[w]e do not intend this decision to mean that the breach of contract by Curran cannot be considered in the context of any subsequent action for bad faith."
The concurring opinion also argues that it is not possible to discern from the record whether Dr. Uricchio would have confirmed the extent of Curran's injuries had Curran attended the examination when scheduled because his report is not in the record. It is true that his report is not in the record, but this argument completely misses the point. The point is that Curran's failure to attend the examination deprived State Farm of the right under the CME provisions of the policy to find out what Dr. Uricchio would have reported prior to the suit being filed so it could have properly evaluated Curran's claim.
The concurring opinion further argues that what Curran did is irrelevant. This is simply wrong. As I will subsequently discuss in more detail, it is well settled that a willful and material breach by the insured of an examination requirement in an insurance policy prohibits the insured from recovering the policy benefits. Clearly, the wrongful conduct Curran engaged in to create a bad faith action for herself is relevant to the issue of willfulness and it is relevant to the members of the majority because they raised the specter of a bad faith action in their opinion. Contrary to what the concurring opinion asserts, I am not arguing that any breach of a CME requirement is a material breach that results in a forfeiture of policy benefits. I am saying that the courts of this state have consistently held that willful noncompliance with examination requirements constitutes a material breach of the policy that eliminates the insured's right to recover under the policy.
When Curran filed her suit after refusing to attend the CME, she not only breached the CME provisions, she also breached the provision in the policy that states:
There is no right of action against us until all terms of this policy have been met....
The CME provision and the no-action provision are included in the policy to give insurance companies like State Farm the right to properly investigate the claim to weed out any false and meritless claims and to pay legitimate claims prior to incurring the expense, time, and effort of a lawsuit. Not only are these valuable rights that help eliminate frivolous and fraudulent claims, they help reduce or eliminate the costs of litigation. These rights are factored into the costs of the insurance and the premiums charged by the insurance company, resulting in reduced costs of insurance and a general savings to the public.
Indeed, Florida law imposes an affirmative duty on insurers to investigate claims made against their policies. See § 626.9891(1)(a), Fla. Stat. (2009) (requiring insurers to establish and maintain a unit within the company to investigate possible *813 fraudulent claims by insureds or persons making claims against policies held by insureds). As I will subsequently discuss, the case law clearly establishes that examination requirements in policies have been an effective tool utilized by insurers to investigate claims for a very long time in Florida.
The original panel decision correctly held that because of Curran's willful and material breach of the examination requirements of the policy, she was not entitled to recover the UM benefits. The en banc majority has rendered an opinion that essentially holds that there is no consequence to Curran for her willful and material breach because she will recover her policy benefits anyway. The holding of the majority rests entirely on its assertion that State Farm did not plead and prove that it was prejudiced by Curran's breach. The majority further contends that the breach is inconsequential because State Farm had the opportunity to have Curran examined under rule 1.360 after the suit was filed. In order to bolster its holding, the majority suggests that the CME provisions are some sort of condition subsequent and a violation of the policy's cooperation clause that does require a showing of prejudice by the insurer. Finally, the majority contends that State Farm could have moved to abate the prematurely filed action, and the fact that it did not obviates the breach and establishes its inconsequential nature. I will address each of these issues in the following sections. I will also explain why the majority's criticism of Goldman v. State Farm Fire General Insurance Co., 660 So.2d 300, 303 (Fla. 4th DCA 1995), review denied, 670 So.2d 938 (Fla.1996), and De Ferrari v. Government Employees Insurance Co., 613 So.2d 101 (Fla. 3d DCA), review denied, 620 So.2d 760 (Fla.1993), is unfounded and based on a misreading of those opinions. I will further explain that if there is a prejudice burden here, the burden was on Curran to show a lack of prejudice.
Before I proceed, it is important to note that the arguments and issues raised by the majority were not raised by the parties in this appeal, and I find it very troubling that State Farm has never had the opportunity to address them.

I. Curran's Refusal To Attend The CME Is A Willful And Material Breach That Precludes Her Recovery Under The Policy Without A Separate Showing Of Prejudice To State Farm

A. The Florida Cases

In 13 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d, § 196:23 (1999), the authors state that breach of an examination clause is a breach of the policy and bars recovery regardless of whether the examination is a condition precedent to suit or recovery, or is part of a cooperation clause:
While the effect of a breach has historically depended on whether the requirement is a condition precedent to recovery or to suit, or an element of the insured's duty to cooperate, discussed below, an insured's failure to comply with a policy condition breaches the policy. Generally, in the absence of a reasonable excuse, when an insured fails to comply with the insurance policy provisions requiring an examination under oath and the production of documents, the breach generally results in forfeiture of coverage, thereby relieving the insurer of its liability to pay, and provides the insurer an absolute defense to an action on the policy.
(Footnotes omitted). This has been the view of the Florida courts for a very long time. The Florida courts focus on the *814 materiality and willfulness of the breach and consider a willful breach of an examination clause to be a material breach that precludes recovery under the policy without resort to a prejudice analysis.[11]
Breach of a CME provision is a material breach of the policy because such examination provisions allow the insurer to investigate a claim to determine whether it is valid and covered under the policy. CMEs, like examinations under oath, play an important part in reducing the incidence of fraudulent and meritless claims. When the insurer is deprived of its right under the examination provisions of a policy to properly investigate a claim, the insurer is prejudiced by the denial of a meaningful opportunity to settle meritorious claims prior to facing suit and by its potential exposure to a bad faith action. In other words, the prejudice to the insurer is the deprivation of its rights under the policy, which includes its right to properly investigate the claim, and no further showing of prejudice is needed after the material breach of the examination provision has been established. In Southern Home Insurance Co. v. Putnal, 57 Fla. 199, 49 So. 922, 932 (1909), the court was faced with insurance provisions much like those in the instant policy:
`The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of accounts, bills, invoices, and other vouchers or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or [its] representatives, and shall permit extracts and copies thereof to be made.
....
`No suit or action on this policy, for [t]he recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire.'
The court explained that "`refusal to comply with this condition will preclude the insured from recovering upon the policy, where it provides that no suit can be maintained until after a compliance with such condition.'" Id. (quoting with approval Firemen's Fund Ins. Co. v. Sims, 115 Ga. 939, 42 S.E. 269, 269 (1902) (Syllabus by the Court, paragraph one)). That remains the rule today. In Goldman v. State Farm Fire General Insurance Co., 660 So.2d 300, 303 (Fla. 4th DCA 1995), review denied, 670 So.2d 938 (Fla.1996), the court held, citing to Putnal:
An insured's refusal to comply with a demand for an examination under oath is a willful and material breach of an insurance contract which precludes the insured from recovery under the policy. Southern Home Ins. Co. v. Putnal, 57 Fla. 199, 49 So. 922, 932 (Fla.1909) (insured's refusal to comply with policy condition that insured submit to an examination under oath "will preclude the *815 insured from recovering upon the policy, where it provides that no suit can be maintained until after a compliance with such condition"); Stringer v. Fireman's Fund Ins. Co., 622 So.2d 145 (Fla. 3d DCA), review denied, 630 So.2d 1101 (Fla.1993) (the failure to submit to an examination under oath is a material breach of the insurance policy which will relieve the insurer of the obligation to pay under contract).
(Emphasis added). The court explained that the insured did not have to prove prejudice and noted that "[w]hile we conclude that no issue of prejudice is involved, if prejudice were to be considered, the burden would fall on the insured to prove no prejudice to the insurer by the insured's actions." Id. at 305 n. 8 (citing Bankers Ins. Co. v. Macias, 475 So.2d 1216, 1218 (Fla.1985) (holding that "[t]he burden should be on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts and examine the insured")). The court also explained the importance of requiring compliance with the examination clause:
A provision in an insurance policy requiring the insured to submit to examination under oath must be complied with, and, if breached, the insurer will be deprived of a valuable right for which it had contracted. 5A J. Appleman & J. Appleman, Insurance Law & Practice § 3549, at 549-50 (1970); American Reliance Ins. Co. v. Riggins, 604 So.2d 535, 535-36 (Fla. 3d DCA 1992) (insured is absolutely required to submit to an examination under oath when requested by an insurer). The purpose of the examination under oath provision was set forth by the United States Supreme Court in Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76 (1884), in which the court stated that the object of the policy provision is to enable the insurer to possess itself of all knowledge and all information as to other sources and means of knowledge, in regards to the facts, material to its rights, to enable it to decide upon its obligations and to protect it against false claims.
Id. at 306 n. 9.
In Shaw v. State Farm Fire & Casualty Co., 37 So.3d 329 (Fla. 5th DCA 2010), like in Putnal, the policy provision is almost identical to the policy provision in the instant case. The Shaw policy provided, "There is no right of action against us ... until all the terms of this policy have been met...." Id. at 338 (Sawaya, J., dissenting). The majority opinion in Shaw states that "[i]t is undisputed that a provision in an insurance policy that requires the insured to submit to an EUO [Examination Under Oath] qualifies as a condition precedent to recovery of policy benefits." 37 So.3d at 331-32 (citing Starling v. Allstate Floridian Ins. Co., 956 So.2d 511, 513 (Fla. 5th DCA 2007); Fassi v. Am. Fire & Cas. Co., 700 So.2d 51 (Fla. 5th DCA 1997); Goldman).
In Fassi v. American Fire & Casualty Co., 700 So.2d 51 (Fla. 5th DCA 1997), the insureds were requested to appear for an examination under oath and answer questions regarding a suspected arson of the insureds' premises. The insureds refused to attend, claiming the Fifth Amendment privilege against self incrimination. This court indicated that the insureds were required to attend because they had a duty to cooperate with the insurer regarding its investigation of the claim. However, this court focused on the materiality of the breach as the determining factor, not whether there was a showing of prejudice. This court held:
Likewise, the claimant may not seek to recover fire losses under an insurance policy and, at the same time, refuse to *816 comply with policy requirements to answer questions under oath because criminal charges related to the cause of the fire may be contemplated or pending against him. The examination in this case was not cancelled because the attorney wished to give appellants the opportunity to state their fifth amendment position on the record. Instead, appellants merely failed to appear.
Id. at 52. Judge Griffin concurred specially, stating, "I agree that the repeated unexcused failures of appellants to appear for examination under oath is fatal to their claim." Id. at 53 (citing Goldman). It is difficult to understand how the repeated unexcused failures to appear for an examination can be fatal to the insured's claim in Fassi but Curran's repeated unexcused and willful failures to attend her examinations are not fatal to her claims.
In De Ferrari v. Government Employees Insurance Co., 613 So.2d 101 (Fla. 3d DCA), review denied, 620 So.2d 760 (Fla. 1993), the court was confronted with an insured who claimed uninsured motorist benefits and failed to attend her scheduled physical examination pursuant to a CME provision almost identical to the clause in the policy issued to Curran. The court held that the breach of this clause is the breach of a condition precedent to recovery, not the breach of a cooperation clause that requires a separate showing of prejudice. The court concluded that summary judgment in favor of the insurer was appropriate because "prejudice is not at issue when an insurer's reasonable request for an I.M.E. is refused by an insured." Id. at 103. In Kazouris v. Government Employees Insurance Co., 706 So.2d 960, 960 (Fla. 5th DCA 1998), this court specifically adopted the De Ferrari analysis to determine "whether the insurer can insist on an independent medical examination when the insured makes a claim under uninsured motorist coverage."
Similarly, in Stringer v. Fireman's Fund Insurance Co., 622 So.2d 145 (Fla. 3d DCA), review denied, 630 So.2d 1101 (Fla. 1993), the materiality of the breach was the determining factor. In Stringer, the court held:
Dale and Sandra Stringer and Old Cutler Corners, Inc., appeal an adverse final judgment denying insurance coverage. "[T]he failure to submit to an examination under oath is a material breach of the policy which will relieve the insurer of its liability to pay." 13A Couch on Insurance 2d (Rev. ed.) § 49A:361, at 760 (1982) (footnote omitted). See also Pervis v. State Farm Fire & Casualty Co., 901 F.2d 944 (11th Cir.), cert. denied, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990).
Id. at 146 (emphasis added).
In Starling v. Allstate Floridian Insurance Co., 956 So.2d 511 (Fla. 5th DCA 2007), the policy required the insured to give the insurer a signed, sworn proof-of-loss form within 60 days after a loss and provided that "[n]o suit or action may be brought against us unless there has been full compliance with all policy terms." Id. at 513. The trial court held that the insured failed to comply with the 60-day notice requirement and, therefore, breached the insurance contract. It further held that as a result of this breach, the insured was not entitled to recover the policy benefits and that the insurer did not have to prove prejudice resulting from the breach. Id. at 513. This court affirmed and held that it was the materiality of the breach that was the determining factor leading to the conclusion that the insured was not entitled to recover the policy benefits. This court explained:
We take account in interpreting Goldman the concept of materiality as an element of a breach that, as in this case *817 also, justified summary judgment. In other words, a material breach of an insured's duty to comply with a policy's condition precedent relieves the insurer of its obligations under the contract. To further explain, the Goldman court affirmed summary judgment after the insureds refused to submit to an EUO following the insurer's first demand, a scheduled EUO continued by the insureds, their filing suit, and the insurer's final request six weeks later. The lower court wrote that the plaintiffs' failure to submit to an EUO prior to filing their lawsuit was a material breach of the insurance contract and relieved the insurer of its obligation to pay under the policy. Goldman, 660 So.2d at 302. Cited in that opinion are several other cases that held a failure to submit to an EUO was a material breach of the policy terms and a condition precedent to the insured's right to recover. See e.g., Pervis v. State Farm Fire & Cas. Co., 901 F.2d 944 (11th Cir.1990) (affirming summary judgment when insured refused to submit to EUO before his arson trial, or during the four months following completion of the trial, and not until after appeal instituted, constituted material breach of policy); Laine v. Allstate Ins. Co., 355 F.Supp.2d 1303 (N.D.Fla.2005) (granting summary judgment when insured, after repeated requests by insurer, refused to submit to EUO for more than five years after fire he allegedly set); Fassi v. Amer. Fire & Cas. Co., 700 So.2d 51 (Fla. 5th DCA 1997) (affirming summary judgment when insureds refused EUO after insurer provided five opportunities to comply); Stringer v. Fireman's Fund Ins. Co., 622 So.2d 145 (Fla. 3d DCA 1993).
This reasoning applies equally to a policy's condition precedent that an insured submit a sworn proof-of-loss. In Ferrer [v. Fidelity & Guar. Ins. Co., 10 F.Supp.2d 1324 (S.D.Fla.1998) ], the insureds never submitted a sworn proof-of-loss. As the court expressed in Haiman v. Federal Insurance Co., 798 So.2d 811 (Fla. 4th DCA 2001):
[A] total failure to comply with policy provisions made a prerequisite to suit under the policy may constitute a breach precluding recovery from the insurer as a matter of law. If, however, the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury.
Id. at 513 (emphasis added). An anomaly in the law has been created by the majority opinion because an insured's failure to submit a timely proof-of-loss statement results in a loss of policy benefits while an insured like Curran who twice willfully refuses to attend a scheduled physical examination is allowed to recover hers.

B. Cases From Other Jurisdictions

The majority of courts in other jurisdictions adopt the same view: willful breach of an examination provision is a material breach that bars recovery. In Watson v. National Surety Corp., 468 N.W.2d 448, 450-52 (Iowa 1991), the court held that breach of examination provisions in a policy constitutes a material breach of the policy and bars recovery of benefits. The court explained:
Even though we have not previously interpreted the questioning-under-oath provision of an insurance policy, we have examined related policy conditions. In other cases in which bringing an action was conditioned on an insured's compliance with certain policy terms, such as giving notice of the loss or cooperating with the insurer, we ruled that these conditions are conditions precedent to an insured's recovery under the policy. Bruns v. Hartford Accident & Indemn. *818 Co., 407 N.W.2d 576, 579 (Iowa 1987); Western Mut. Ins. Co. v. Baldwin, 258 Iowa 460, 472, 137 N.W.2d 918, 925 (1965).
Other jurisdictions have similarly interpreted the examination-under-oath requirement of an insurance policy. The majority of courts have consistently held that failure to submit to questions under oath is a material breach of the policy terms and a condition precedent to an insured's recovery under the policy. See, e.g., Pervis v. State Farm Fire & Cas. Co., 901 F.2d 944, 946 (11th Cir.1990); West v. State Farm & Cas. Co., 868 F.2d 348, 349 (9th Cir.1989) (per curiam); Stover v. Aetna Cas. & Sur. Co., 658 F.Supp. 156, 159 (S.D.W.Va. 1987); Kisting v. Westchester Fire Ins. Co., 290 F.Supp. 141, 147 (W.D.Wis. 1968), aff'd, 416 F.2d 967 (7th Cir.1969); Warrilow v. Superior Court, 142 Ariz. 250, 253, 689 P.2d 193, 196 (Ariz.Ct.App. 1984); Standard Mut. Ins. Co. v. Boyd, 452 N.E.2d 1074, 1079 (Ind.Ct.App. 1983); Allison v. State Farm Fire & Cas. Co., 543 So.2d 661, 663 (Miss.1989); Azeem v. Colonial Assurance Co., 96 A.D.2d 123, 124, 468 N.Y.S.2d 248, 249 (1983), aff'd, 62 N.Y.2d 951, 479 N.Y.S.2d 216, 468 N.E.2d 54 (1984); see also 5A J. Appleman & J. Appleman, Insurance Law & Practice § 3549, at 549-50 (1970); 13A G. Couch, Couch on Insurance 2d § 49A:361, at 759 (M. Rhodes rev. ed.1982); 44 Am.Jur.2d Insurance § 1364, at 290-91, § 1366, at 294 (1982). We likewise hold that submission to questions under oath is a condition precedent to an insured's recovery under an insurance policy.
Id. at 450-52 (emphasis added).
In Spears v. Tennessee Farmers Mutual Insurance Co., 300 S.W.3d 671 (Tenn.Ct. App.2009), the policy provided, "No legal action may be brought against us until there has been full compliance with all the terms of this policy." Id. at 679 (emphasis added). The court recognized the majority rule and held:
Courts in other jurisdictions have similarly interpreted the examination-under-oath requirement of an insurance policy and have consistently held that failure to submit to questions under oath is a material breach of the policy terms and a condition precedent to an insured's recovery under the policy. We likewise find that submission to answer questions under oath when requested as provided for in the insurance policy at issue is a condition precedent to an insured's recovery under that policy.
Id. at 680-81 (citations omitted).
In Krigsman v. Progressive Northern Insurance Co., 151 N.H. 643, 864 A.2d 330, 334-35 (2005), the court held that breach of an examination clause is a material breach that bars recovery under the policy. Citing to Goldman, the court explained:
Although we have not previously addressed this issue, "[i]t is the law in most jurisdictions that the submission to an examination, if the request is reasonable, is strictly construed as a condition precedent to the insurer's liability." Mello v. Hingham Mut. Fire Ins. Co., 421 Mass. 333, 656 N.E.2d 1247, 1250 (1995); see also Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300, 303 (Fla.Dist.Ct.App.1995), review denied, 670 So.2d 938 (Fla.1996); 13 L. Russ & T. Segalla, Couch on Insurance 3d § 196:22 (1999)....
The policy unambiguously states that the insured must allow Progressive to take an examination under oath and that Progressive may not be sued unless there is full compliance with all of the policy terms, including the EUO provision. A reasonable person in the petitioner's *819 position would interpret the policy as requiring compliance with the EUO request prior to filing suit. See Godbout, 150 N.H. at 105, 834 A.2d 360. Thus, we conclude that the language of the petitioner's policy makes submission to a reasonable request for an EUO a condition precedent to filing suit. See Goldman, 660 So.2d at 303; Mello, 656 N.E.2d at 1249 n. 3 (examining similar policy language).
Courts that construe submission to an EUO as a condition precedent to recovery generally do not require the insurer to prove that it suffered actual prejudice from an insured's unexcused refusal to submit to an examination. Lorenzo-Martinez v. Safety Ins. Co., 58 Mass. App.Ct. 359, 790 N.E.2d 692, 695-96 (2003). The purpose of an EUO provision is to enable the carrier "to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims." Claflin v. Commonwealth Insurance Co., 110 U.S. 81, 94-95, 3 S.Ct. 507, 28 L.Ed. 76 (1884). The EUO provides a mechanism for the insurer to corroborate the claim by obtaining information that is primarily or exclusively within the possession of the insured. Lorenzo-Martinez, 790 N.E.2d at 696.
In support of his contention that Progressive must prove actual prejudice, the petitioner relies on Dover Mills Partnership v. Commercial Union Insurance Cos., which held that an insurer must prove it has been prejudiced by an insured's failure to report a potential claim "as soon as practicable" under an occurrence-based policy. Dover Mills Partnership v. Comm. Union Ins. Cos., 144 N.H. 336, 339, 740 A.2d 1064 (1999). But see Bianco Prof. Assoc. v. Home Ins. Co., 144 N.H. 288, 296, 740 A.2d 1051 (1999) (holding that insurer is not required to prove prejudice due to late notice under a claims-made policy). This holding reflects the view that "[t]he insured should not forfeit the protection he has paid for in the absence of a substantial breach." Abington Fire Ins. Co. v. Drew, 109 N.H. 464, 466, 254 A.2d 829 (1969). We examine any prejudice to the insurer, as well as the length of the delay and the reasons for it, to determine whether reasonable notice was given in light of the circumstances of the case. Dover Mills Partnership, 144 N.H. at 338, 740 A.2d 1064. Unless the insurer was prejudiced by the late notice, the insured's failure to timely report the claim is not a material breach of the policy that would excuse the insurer from performance. Id. at 339, 740 A.2d 1064.
The effect of an insured's breach of an EUO provision differs from the failure to provide timely notice. A delay in receiving notice does not necessarily impair the insurer's ability to investigate the claim. See id. In contrast, an insured's refusal to submit to an EUO significantly affects the insurer's investigation of the claim. See Lorenzo-Martinez, 790 N.E.2d at 696. Here, Progressive requested the EUO in order to resolve the residency issue and make a coverage determination. We will not require Progressive to prove that it has been prejudiced by the petitioner's refusal to submit to the EUO.
Id. at 647-49, 864 A.2d 330.
In Laine v. Allstate Insurance Co., 355 F.Supp.2d 1303, 1306 (N.D.Fla.2005), the insured filed a claim to recover under his insurance policy for damages to a building caused by fire. Pursuant to an examination clause in the policy, the insurer requested the insured attend an examination *820 under oath so the insurer could investigate the claim. The insured refused to attend based on criminal charges that were pending against him for arson. The court held that the insured's refusal to attend constituted a breach of the policy that precluded recovery. The court explained why the insurer did not have to make a separate showing of prejudice:
[I]t might be suggested that an insurer should be able to avoid paying a claim based on an insured's failure to appear for an examination only if the insurer suffers prejudice as a result of the nonappearance. Again, whether this argument would carry the day may be subject to considerable doubt; the law of contracts ordinarily makes materiality of the breach, not prejudice, the point of departure for issues of this type, and Florida intermediate appellate courts have so held, specifically in this context. See, e.g., Stringer, 622 So.2d at 145 (affirming judgment for insurer: the "failure to submit to an examination under oath is a material breach of the policy which will relieve the insurer of its liability to pay," quoting treatise); Goldman, 660 So.2d 300 (holding no showing of prejudice is required in order for insurer to prevail based on insured's failure to appear for examination under oath); see also De Ferrari, 613 So.2d 101 (affirming summary judgment for insurer based on insured's failure to appear for medical examination as required by policy and stating that no showing of prejudice is required).
Id. at 1306 (emphasis added). The court further explained that "the whole point of the examination under oath requirement is to afford the insurer an opportunity investigate whether or not the insured was and is telling the truth. Depriving the insurer of that opportunity is sufficient prejudice, even if, indeed, prejudice is required." Id. at 1306, n. 2.
Even when the willful breach of a CME provision is considered a breach of a cooperation clause, the courts consider it a material breach that bars recovery. In Hanover Insurance Co. v. Cape Cod Custom Home Theater, Inc., 72 Mass.App.Ct. 331, 891 N.E.2d 703 (2008), for example, the court explained why a willful breach of an examination clause precludes recovery:
Recently, we had occasion to observe that, as a general rule, an insurer may not disclaim coverage by virtue of an insured's breach of its duty to cooperate absent a showing of prejudice. Boffoli v. Premier Ins. Co., 71 Mass.App.Ct. 212, 216, 880 N.E.2d 826 (2008). We went on to underscore, however, the significance of the examination under oath. "[B]ecause of the importance of weeding out fraud ... we have recognized a limited exception to the prejudice requirement in those cases where there was a wilful and unexcused refusal of the insured to comply with an insurer's timely request for an examination under oath." Ibid.

Id. at 707. The court further held that if the breach is willful, the insured is not entitled to belatedly comply. Id.
In Lorenzo-Martinez v. Safety Insurance Co., 58 Mass.App.Ct. 359, 790 N.E.2d 692 (2003), the court considered the examination clause in a case involving a claim for uninsured motorist benefits. The court similarly explained that a willful breach of an examination requirement constitutes a bar to recovery without a showing of prejudice because of the vital importance of the examination provision in allowing the insurer to properly investigate the claim to weed out false and fraudulent claims. The court noted:
Consequently, an insured's wilful, unexcused failure to submit to an examination under oath constitutes a breach of *821 the standard automobile insurance contract resulting in forfeiture of coverage for uninsured motorist benefits without proof of actual prejudice resulting to the insurer's interests. Our ruling appears to comport with the law in other jurisdictions. See 13 Couch, Insurance § 196.23 (3d ed. 1999) ("Generally, in the absence of a reasonable excuse, when an insured fails to comply with the insurance policy provisions requiring an examination under oath ... the breach generally results in forfeiture of coverage, thereby relieving the insurer of its liability to pay, and provides the insurer an absolute defense to an action on the policy").
Id. at 696. Similarly, in Weissberg v. Royal Insurance Co., 240 A.D.2d 733, 659 N.Y.S.2d 505, (N.Y.App.Div.1997), the court explained that the purpose of a cooperation clause is to enable the insurer to properly investigate the claim in order to protect itself from false and fraudulent claims and that "the insureds' willful failure to provide material and relevant documents, or to submit to an examination under oath, is a material breach of the policy which bars recovery under the policy." Id. at 507. In Warrilow v. Superior Court of Arizona, 142 Ariz. 250, 689 P.2d 193 (1984), the court held that an examination under oath clause is "a standard provision usually found in insurance contracts of this nature, and the law is well settled that a failure or refusal of the insured to comply with his obligation of cooperation under such a provision will constitute a bar to any recovery against the insurance company." Id. at 196.
The approach adopted by the Florida courts and the majority of courts in other jurisdictions requires the courts to base any determination regarding the consequences of the breach on whether the breach was willful and material. The purpose of the CME provision is to allow the insurer the opportunity to properly investigate the claim to determine whether it is a legitimate claim covered under the policy or whether is false or fraudulent. This is why the courts consider a willful breach of an examination clause to be a material breach that bars recovery of the policy proceeds. As the court in Taylor v. Fireman's Fund Insurance Co., 306 So.2d 638, 645 (Miss.1974), explained, the failure to comply with an examination clause precludes recovery under the policy because "`[t]he object of the provisions in the policies of insurance, requiring the assured to submit himself to an examination under oath, to be reduced to writing, was to enable the Company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to its rights, to enable it to decide upon its obligations, and to protect it against false claims.'" Id. at 645 (quoting Standard Ins. Co. v. Anderson, 227 Miss. 397, 86 So.2d 298, 301-02 (1956) (quoting with approval Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76 (1884))).
The majority asserts that the CME clause is a condition subsequent thus triggering a requirement that the insurer show prejudice. That is simply wrong. It is a condition precedent to recovery under the policy. "A condition precedent has been defined as one which calls for the performance of some act, or the happening of some event after a contract is entered into, upon the performance or happening of which its obligation to perform is made to depend." Alvarez v. Rendon, 953 So.2d 702, 708 (Fla. 5th DCA 2007). The Florida courts and the courts in the majority of other jurisdictions hold that compliance with the examination provisions in a policy, like the CME provisions at issue in the instant case, must be complied with in order to obligate the insurer under the *822 policy to pay the claim. Hence, willful breach of the examination clause and filing suit without compliance with that requirement constitute breaches of conditions precedent to recovery. That is clear from the holdings of the cases just surveyed.
A further showing of prejudice is not required because prejudice to the insurer is established by the fact of the willful breach: the insurer loses its right to properly investigate and evaluate the claim and settle that claim prior to suit to avoid the expense, time, and effort of litigation. As Judge Monaco states in his concurring opinion, prejudice has been established by Curran's breach of the CME and no-action requirements and State Farm was harmed because it "was denied the opportunity to offer its policy limits in advance of suit, and thus avoid a potential bad-faith claim, it put ... the defendant through a completely unnecessary trial" and established a "bad-faith suit is undoubtedly on the horizon." One must ask, what more prejudice and harm must an insured inflict on an insurer before she loses her right to recover under the policy?

C. If Prejudice Is An Issue, Curran Had The Burden To Show Lack Of Prejudice To State Farm

The court in Bankers Insurance Co. v. Macias, 475 So.2d 1216 (Fla.1985), was concerned with the failure of the insured to timely file a notice of accident in a PIP case. The issue in Macias was "whether a presumption of prejudice to an insurer arises where an insured fails to give timely notice of an accident to the insurer." Id. at 1217. In reference to the notice of accident requirement, the court in Macias stated, "The notice requirement entitles the insurer to conduct a timely and adequate investigation of all circumstances surrounding the accident." Id. at 1217. The court held that "[t]he burden should be on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts and to examine the insured. This rule should apply to claims under a PIP policy just as well as to claims under other policies." Id. at 1218 (emphasis added). The court further held that a cooperation clause analysis of prejudice is inapplicable to instances where the insured fails to give prompt notice of an accident to the insurer. Under Macias, the burden was on Curran to establish that State Farm was not prejudiced by her breach of the CME provisions. Since Curran failed to meet her burden, State Farm is entitled to judgment in its favor. As the court in Goldman stated, "While we conclude that no issue of prejudice is involved, if prejudice were to be considered, the burden would fall on the insured to prove no prejudice to the insurer by the insured's actions." 660 So.2d at 305 n. 8 (citing Macias).
The majority contends that the failure to comply with the CME requirements is an affirmative defense that State Farm must plead and prove and, therefore, the burden is on State Farm. State Farm did meet its burden of establishing its affirmative defense. The record reveals that Curran pled in her complaint that she had complied with all conditions precedent, and State Farm answered that allegation with a denial and filed its affirmative defense that she breached the CME provisions of the policy. State Farm did establish that she willfully breached the policy by twice refusing to attend a scheduled examination, and even the majority concedes that Curran breached the policy. Once State Farm established that breach, prejudice is established and, under Macias, the burden shifted to Curran to show that State Farm was not prejudiced. Curran did not attempt to meet this burden because she could not. Curran willfully breached the CME clause by twice refusing to attend a *823 scheduled examination; she deprived State Farm of its contractual right to properly investigate her claim prior to suit; she filed suit in violation of the no-action clause and embroiled State Farm in an unnecessary lawsuit with its attendant expenses; she breached the policy in order to set a bad faith trap for State Farm; and she obstructed State Farm's efforts to set an examination shortly after the suit was filed. To suggest that Curran could engage in this wrongful conduct and then contend that her conduct did not prejudice State Farm would defy logic and common sense. That is why her only argument to this court in this appeal is that she did not refuse to attend the examinations.

D. The Prejudice Rule Adopted by the Majority and Advanced In Judge Lawson's Concurring Opinion
The prejudice rule adopted by the majority and advanced in Judge Lawson's concurring opinion provides in the vernacular of the concurring opinion that the best approach "is a measured one that correlates the damages to the prejudice caused by the breach." In light of what the record clearly reveals and the way in which the majority applies this rule in the instant case, the majority's concept of prejudice and damages is a rather strange one. The record clearly reveals that Curran willfully breached the CME clause by twice refusing to attend a scheduled examination and that is not disputed by the majority: she deprived State Farm of its contractual right to properly investigate her claim prior to suit; she engaged in a scheme to establish a bad faith action against State Farm; she prematurely filed suit in violation of the no-action clause and embroiled State Farm in an unnecessary lawsuit with its attendant expenses; and she obstructed State Farm's efforts to set an examination shortly after the suit was filed. It is difficult to conceive of how an insurer could be more prejudiced and damaged. And yet, in applying this new rule to "correlate[] the damages to the prejudice" caused by Curran's breaches, the majority actually calculates those "damages" at zero. Even under fundamental principles of contract law, a breach has consequences and it is error not to award damages to the non-breaching party. MSM Golf, L.L.C. v. Newgent, 853 So.2d 1086 (Fla. 5th DCA 2003); Destiny Constr. Co. v. Martin K. Eby Constr., 662 So.2d 388 (Fla. 5th DCA 1995); Onontario of Fla., Inc. v. R.P. Trucking Co., Inc., 399 So.2d 1117 (Fla. 4th DCA 1981); Muroff v. Dill, 386 So.2d 1281 (Fla. 4th DCA 1980), review. denied, 392 So.2d 1377 (Fla.1981). Application of this new rule in this manner certainly shows to me that this prejudice and damage correlation analysis is untenable, leads to absurd and unjust results, and will be an incentive to others to engage in similar wrongful conduct. If there is to be a prejudice analysis in instances where an insured willfully breaches an examination requirement in a policy, I believe that Macias establishes the better reasoned approach: if the insured fails to establish lack of prejudice to the insurer, the insured is not entitled to recover the policy benefits.
The concurring opinion goes so far as to fault State Farm for relying on established case law in this state like De Ferrari. The opinion further argues that State Farm's failure to include a specific clause in its policy stating what happens when an insured breaches an examination clause prohibits the very outcome dictated by Putnal, Goldman, and De Ferrari. I totally reject these arguments. It is well settled that "[c]ontracts are made in legal contemplation of the existing applicable law." Lanza v. Damian Carpentry, Inc., 6 So.3d 674, 676 (Fla. 1st DCA 2009); see also Brandt v. Brandt, 525 So.2d 1017, 1020 (Fla. 4th DCA 1988); S. Crane Rentals, *824 Inc. v. City of Gainesville, 429 So.2d 771, 773 (Fla. 1st DCA 1983). It has been settled law in this state for a very long time that willful breach of an examination clause in an insurance policy by the insured prevents the insured's recovery under the policy. Putnal; Goldman; and De Ferrari; see also Shaw. Therefore, these decisions establish the result of an insured's breach of an examination provision in the absence of a specific clause in the policy stating what the result should be. Moreover, lack of a clause in the policy stating the consequence of breach of the CME requirement is an issue that Curran never raised. She never raised this issue because, as is evident from her arguments in the trial court and these appellate proceedings, she and State Farm knew that the case law clearly established the consequence of her breach. Now, the majority wants the Florida Supreme Court to change that case law and establish a new rule. I do not think that State Farm should be faulted because it relied on well settled law in defending this suit, and I do not think that the policy needed a provision to tell Curran what she already knew. Lastly, contrary to what the majority and concurring opinions conclude, I certainly do not think that the lack of such a provision should entitle Curran to willfully breach the CME requirement and suffer no consequence for her wrongdoing.
The concurring opinion argues that because State Farm did not admit liability after the suit was filed and did not schedule the examination until one day before the expiration of Curran's demand for policy limits, it is conjecture to assert that State Farm would have tendered the policy if it had had the opportunity to properly verify Curran's claim. This argument misses the point entirely and fails to apprehend the consequences of what Curran did. First, State Farm is not required to schedule the examination within a time limit for a settlement demand set by Curran. Second, Curran's conduct ensured that State Farm would not have the choice to pay the claim prior to suit and avoid the costs of litigation and the exposure to a bad faith action. The fact that State Farm never conceded liability of the tortfeasor after Curran prematurely filed her suit has nothing to do with this issue. The record reveals that even after the suit was filed Curran obstructed State Farm's efforts to have Curran examined and when State Farm finally did get the opportunity to have her examined, the time limitations under the Civil Remedies Notice had long expired and Curran had established the predicate for her bad faith action. It makes no sense to suggest that at that point State Farm would admit liability and concede its exposure to an excess judgment via a bad faith action, and it certainly makes no sense to suggest that State Farm would initially answer the suit with an admission of liability without knowing whether the claim is valid and compensable under the policy.
The concurring opinion labels State Farm's exposure to a bad faith action "hypothetical prejudice." Once again this argument completely misses the point. First, State Farm had the right to properly investigate the claim under the CME provisions of the policy so it could avoid exposure to a bad faith claim. Curran took that right away from State Farm and created a right of action by her conduct that otherwise would not have existed. Second, when the predicate is laid for a bad faith action, it affects the conduct of the insurer in terms of paying the claim and settling the suit once it is able to properly investigate the claim because it gives the insured more leverage to insist on settlement in excess of the policy limits. Hence Curran's Proposal For Settlement pursuant to section 768.79, Florida *825 Statutes, and rule 1.442, Florida Rules of Civil Procedure, for ten times the amount of the policy limits. I would also note that the trial court considered it more than "hypothetical" because the final judgment provides that the trial court reserved jurisdiction to enter judgment after the determination of "attorney's fees and any pending claims for bad faith." While the concurring opinion may label exposure to a bad faith action as "hypothetical prejudice," I do not think that State Farm considers it "hypothetical prejudice" and I hardly think there is any insurer that would.
The concurring opinion misreads the decision in Custer Medical Center v. United Automobile Insurance Co., 62 So.3d 1086 (Fla.2010). In that case, the court was concerned with a PIP statute found in section 627.736(4)(b) that states PIP payments for bills submitted become overdue after 30 days. The requested examination in Custer was not scheduled until long after this period had expired and the bills were overdue. The PIP statute further provides that refusal to attend an examination eliminates the insurer's liability "for subsequent ... benefits." § 627.736(7)(b), Fla. Stat. (2001). The court simply held that an examination refusal eliminates the payment of subsequent benefits, not benefits that are overdue prior to the scheduled examination. Uninsured motorist payments are not due until a court renders a judgment saying they are due and, therefore, the request for examination is made long before trial and the rendering of the judgment. Hence, under Custer, compliance with a CME provision in a policy is a condition precedent to recovery of uninsured motorist benefits and a condition precedent to recovery of subsequent PIP benefits.
Finally, the concurring opinion argues that breach of the no-action provision of the policy was not an issue raised in the trial court proceedings. I believe it is ironic that the concurring opinion would raise that argument in light of the fact that none of the issues and arguments relied on by the majority to arrive at its decision were raised in the trial court or in these appellate proceedings. My dissent simply replies to the many issues and arguments raised for the first time by the majority.

II. Curran's Subsequent Examination After The Suit Was Filed Pursuant To Rule 1.360 Does Not Obviate Or Cure The Breach Or Render The Breach Inconsequential
The majority contends that after the suit was filed, Curran offered to attend a CME prior to the expiration of the sixty-day, bad faith notice provision and State Farm did not take her up on that offer. The majority further contends that this either obviated the breach or rendered it inconsequential. However, that is not what Curran did. After suit was filed, she notified State Farm to "utilize the appropriate means for requesting a CME of Ms. Curran available under the Florida Rules of Civil Procedure...." The majority asserts that State Farm declined that offer and deliberately "deferred the opportunity to obtain a post-suit CME until the coverage issue was determined."
The majority is wrong for several reasons. First, although Curran advised State Farm after the suit was filed that she was willing to attend an IME under the rule, as the majority recognizes, Curran made it clear that she would do so only if State Farm agreed to all of her demands, including the waiver demand.[12] *826 Second, State Farm attempted to obtain an examination of Curran long before the coverage issue was determined. Shortly after the suit was filed, State Farm filed a Request For Physical Examination pursuant to rule 1.360, seeking to have Curran examined on November 20, 2007, by the same doctor at the same location Curran had previously agreed to. Incredibly, Curran filed an objection wherein she actually objected to, among other things, the doctor and the location of the examination. The hearing on the coverage issue raised in the motions for summary judgment was held several months later on March 18, 2008. When State Farm finally did have Curran examined, the sixty-day window under section 624.155 had expired and State Farm had lost the option to tender the policy limits to avoid a bad faith action. See Talat Enters., Inc. v. Aetna Cas. & Sur. Co., 753 So.2d 1278, 1282 (Fla.2000) ("`The sixty-day window is designed to be a cure period that will encourage payment of the underlying claim, and avoid unnecessary bad faith litigation.'" (quoting with approval Talat Enters., Inc. v. Aetna Cas. & Sur. Co., 952 F.Supp. 773, 778 (M.D.Fla. 1996))).
Moreover, the record reveals that after the suit was filed, State Farm's lawyer advised Curran's lawyer that State Farm could not schedule an examination with Dr. Uricchio prior to the expiration of the sixty-day window period. Hence, after she filed her suit and refused to attend the second scheduled CME, Curran knew that State Farm could not timely reschedule Dr. Uricchio and that the trap had been sprung. The assertion that State Farm had deliberately waited until after the coverage issue to attempt to obtain an examination is not only wrong, it is pointless and irrelevant.
Any litigant has the right to seek an IME under the rule after suit is filed. The CME provision in the policy is a contract right that provides the insurer the ability to investigate the claim prior to suit to weed out fraudulent and meritless claims. To hold as the majority does, that an insured can breach the CME provisions as Curran did on two occasions and then have that breach obviated or rendered inconsequential by virtue of a rule of civil procedure, reduces the insurer's rights under the CME provisions of the contract to nothing more than meaningless words on a useless piece of paper. Not only does the majority's holding essentially erase CME provisions from insurance policies, it is an open invitation to aberrant insureds to violate CME provisions and the rights of insurers that bargained for them and adjusted their premiums in reliance on them. I believe this is profoundly wrong.

III. Breach Of The CME Provision Is Not A Breach Of The Cooperation Clause And A CME Is Not A Condition Subsequent
A condition subsequent has been defined as a future event upon the happening *827 of which the agreement or obligations of the parties would be no longer binding....
... The term "condition subsequent," as normally used in contracts in contrast to "condition precedent," should mean an event which occurs subsequent to a duty of immediate performance, that is, a condition which divests a duty of immediate performance of a contract after it has once accrued and become absolute. True conditions subsequent are very rare in the law of contracts.
13 Richard A. Lord, Williston on Contracts § 38:9 (4th ed.2000) (footnotes omitted); see also Seitter v. Riverside Acad., 144 Fla. 69, 197 So. 764, 765 (1940) ("`A condition subsequent of a contract is one which follows the performance of the contract.'" (quoting Nw. Nat'l Life Ins. Co. v. Ward, 56 Okla. 188, 155 P. 524, 526 (Okla. 1915))).
Conditions subsequent in insurance policies involve cooperation clause provisions. In Bankers Insurance Co. v. Macias, 475 So.2d 1216, 1217 (Fla.1985), the court stated, "The cooperation requirement ... arises to prevent fraud and collusion in proceedings to determine liability once notice has been given." Id. at 1217; 16 Richard A. Lord, Williston on Contracts § 49:106 (4th ed. 2000) ("A standard clause in casualty insurance policies provides that the insured's right to indemnification depends on the insured cooperating with the insurer in defending claims. The purpose of a cooperation clause is to require that the insured cooperate in good faith with the insurance company in the defense of claims, preserving the insurer's right to adequately prepare a defense, and limiting the possibility of fraud or collusion between the insured and the claimant.").
When a cooperation clause is involved, the insurer has undertaken the defense of a liability claim on behalf of the tortfeasor/insured and is entitled to the subsequent cooperation of the insured in defending that claim. In other words, once the insurer undertakes its duty of defense, "[t]he insured has the reciprocal obligation to allow the insurer to control the defense and to cooperate with the insurer." Doe ex rel. Doe v. Allstate Ins. Co., 653 So.2d 371, 374 (Fla.1995). Hence, the insurer becomes the fiduciary of the insured in terms of handling the litigation and defending the insured against the claims of the injured victim. In Eastern Air Lines, Inc. v. U.S. Aviation Underwriters, Inc., 716 So.2d 340, 343 (Fla. 3d DCA 1998), the court explained, "The cooperation requirement applies in Florida only when the insured and the insurer are in a fiduciary relationship; the insurer has the duty to operate in good faith, and the insured `has the reciprocal obligation to allow the insurer to control the defense and to cooperate with the insurer.'" Id. at 343 (quoting Doe, 653 So.2d at 374).
Therefore, under the cooperation provisions of an insurance policy, once the insurer undertakes the duty to defend the insured, the insured is required to assist the insurer in that defense. If the insured breaches the cooperation provisions of the policy, the insurer is obligated to show that the breach prejudiced it in order to successfully refuse any further defense of the action and/or payment of benefits to the injured victim because prejudice does not necessarily occur from the fact of the breach, especially in instances where the insured makes valid attempts to cooperate.
Here, the suit is an uninsured motorist claim where the insurance company steps into the shoes of the tortfeasor and takes on an adversarial role against its insured. State Farm Mut. Auto. Ins. Co. v. Revuelta, 901 So.2d 377 (Fla. 3d DCA 2005). In this instance, there is no fiduciary relationship between the insurer and the insured *828 because the insurer is not defending the insured against the claims of another; rather, the insurer is defending itself against the claims of the insured. See Eastern Airlines. The insured is burdened with proving all of the elements of the cause of action it has against the tortfeasor and the insurer may raise defenses that would have been available to the tortfeasor. Thus, there is no duty on the part of the insured to cooperate in the defense of a lawsuit the insured brings against the insurer because they are in an adversarial relationship rather than a fiduciary relationship. Hence, Curran's breach of the CME provision cannot be a breach of the cooperation clause triggering a separate prejudice analysis.[13]
Moreover the policy issued to Curran does have a cooperation clause and the CME provisions, which are found in a separately numbered paragraph, are not included in that clause. If the parties had intended the CME provisions to be included in the cooperation clause, they certainly could have written the policy to make that inclusion, but they did not. That can only be accomplished now by judicial rewriting of the policy, which is prohibited. N. Am. Van Lines v. Collyer, 616 So.2d 177, 179 (Fla. 5th DCA 1993) ("A court is not empowered to rewrite a clear and unambiguous provision, nor should it attempt to make an otherwise valid contract more reasonable for one of the parties.").

IV. The Majority's Criticism Of The Decisions In Goldman And De Ferrari Are Based On The Majority's Misreading Of Those Opinions
I disagree with the majority's reading of the cases relied upon by State Farm and cited in the original panel opinion. The majority primarily argues that they were decided based on the PIP provision in *829 section 627.736(7)(b), which states that failure to attend a physical or mental examination may prevent further payment of PIP benefits. The majority levels this criticism against De Ferrari v. Government Employees Insurance Co., 613 So.2d 101 (Fla. 3d DCA), review denied, 620 So.2d 760 (Fla.1993). The court in that case specifically stated that it was a case involving an uninsured motorist claim. The discussion about the PIP statute was background information explaining the insured's counsel's claim that the provisions in the PIP statute regarding the doctor's qualifications should be looked to in determining the doctor's qualifications in that case. The court does quote the PIP statute in a footnote to explain the attorney's contention, and conspicuously absent from that quote is the provision that failure to attend an examination may deprive the insured of further benefits. It is clear that the court in De Ferrari did not decide the case based on the PIP statute, but rather based its decision on the terms of the policy. The pertinent policy language is quoted in the opinion; it states: "The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require." Id. at 102. The court held that the failure to attend an IME was a breach of a condition precedent to coverage, citing to Orozco v. State Farm Mutual Automobile Insurance Co., 360 F.Supp. 223 (S.D.Fla.1972), affirmed, 480 F.2d 923 (5th Cir.1973), which is a case involving a claim for uninsured motorists benefits. De Ferrari does discuss the insured's analogy to breach of cooperation clause cases, but rejected that argument and the prejudice requirement. 613 So.2d at 103. The case of Griffin v. Stonewall Insurance Co., 346 So.2d 97 (Fla. 3d DCA 1977), which is cited in the De Ferrari opinion, is a PIP case, but the 1975 PIP statute at issue in Griffin did not contain the forfeiture of benefits clausethat clause was not written into the statute until 1976.[14] Moreover, the De Ferrari court also cited to Orozco, which is an uninsured motorist case. The other cases cited, Allstate Insurance Co. v. Graham, 541 So.2d 160 (Fla. 2d DCA 1989), and Tindall v. Allstate Insurance Co., 472 So.2d 1291 (Fla. 2d DCA 1985), review denied, 484 So.2d 10 (Fla.1986), are PIP cases, but it is clear that the court did not decide De Ferrari based on the PIP statute, but on the provisions of the policy; it expressly stated, "Considering insured's actions and the clear language of the instant policy, we conclude that the insurer was entitled to summary judgment." 613 So.2d at 103.
I do not think the court in Custer Medical Center v. United Automobile Insurance Co., 62 So.3d 1086 (Fla.2010), squarely called the decision in De Ferrari into question as the majority contends. To the contrary, I think the court in Custer essentially reaffirmed the application of De Ferrari to uninsured motorist cases. Custer involved a PIP case and the forfeiture provisions in the PIP statute. The court in Custer simply stated that De Ferrari is inapposite because "the district court expressly limited its holding to `uninsured motorist benefits,' and did not address PIP coverage...." Id. at 1099. The court also stated that the insurer in De Ferrari, as *830 State Farm did in the instant case, "pled the unreasonable failure to attend a medical examination as an affirmative defense (not as a condition precedent to the policy's existence)." Id. If the court in Custer meant to question the viability of De Ferrari, it clearly would have said so and would not have cited and discussed De Ferrari in the manner that it did.
The decision in Goldman v. State Farm General Fire Insurance Co., 660 So.2d 300 (Fla. 4th DCA 1995), review denied, 670 So.2d 938 (Fla.1996), also was not decided based on the PIP statute or a PIP analysis. It is also clear that Goldman did not base its decision on a prejudice analysis, as the majority erroneously contends. The court in Goldman made it clear that prejudice was not an issue and that even if prejudice were to be considered, the burden would be on the insured to show a lack of prejudice, citing Macias.
The majority says it is skeptical of Goldman because it "is wedged between two conflicting decisions," Wapnick v. State Farm Mutual Automobile Insurance Co., 54 So.3d 1065, 1067 (Fla. 4th DCA 2011), and Leasing Service Corp. v. American Motorists Insurance Co., 496 So.2d 847 (Fla. 4th DCA1986), review denied, 508 So.2d 13 (Fla.1987). Those decisions do not conflict with Goldman. In Wapnick, the insured filed a declaratory relief action to determine whether he was obligated to attend the requested examination in a particular county. That was the only issue the Fourth District Court considered in Wapnick. In Goldman, the insured filed a breach of contract action against the insurer seeking the policy proceeds in breach of both the examination clause and the no-action clause in the policy. The court in Wapnick simply held that the insured was obligated to attend the examination in the county designated by the insurer and that he should be given the opportunity do so before the coverage issue was decided. I do not think that Wapnick is in conflict with Goldman.
In Leasing Services, although the provisions of the policy are not quoted in the opinion, the court held that the particular examination requirement was a violation of the cooperation clause and therefore prejudice was an issue. The court in Goldman made it clear that the breach was a violation of the examination clause and the no-action clause. Not only is Leasing Services not in conflict with Goldman, it is not in conflict with the instant case because the examination clause in the policy State Farm issued to Curran is not included in the provisions of the cooperation clause. I do not think that the decisions in Wapnick and Leasing Services are even analogous to Goldman or the instant case.
Finally, Goldman is one of the leading cases on breach of examination clauses and has been cited numerous times by courts in Florida and other states. Although there may be some judges on this court that view Goldman with skepticism, the vast majority of judges in this state, and others, do not.

V. Abatement Of The Suit
The majority states that State Farm could have asked for an abatement of Curran's suit. I really do not think this is relevant to the issues in this case. In any event, State Farm had worked in good faith to set the examinations, and Curran refused to attend both scheduled examinations. State Farm warned her of the consequences of her breach, and she refused to attend and filed her lawsuit anyway. The majority's assertion literally begs the question how many times must State Farm make the request and how many times must Curran refuse to attend before State Farm is entitled to invoke its rights under the contract? Once Curran persisted in *831 her refusals and after she filed her suit, I do not think State Farm was obligated to do anything more. Indeed, that is exactly what the courts hold. In Pervis v. State Farm Fire & Casualty Co., 901 F.2d 944, 948 (11th Cir.), cert. denied, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990), the court held:
State Farm had no obligation to repeat its request for an examination after appellant breached the contract, and appellant's offer to be examined, as expressed on appeal, comes too late to be considered. Under the circumstances of this case, there is no principle that excuses Pervis' refusal to submit to an examination under oath such that he should be permitted to pursue his action against State Farm.
Id. at 948; see also Wright v. Life Ins. Co. of Georgia, 762 So.2d 992 (Fla. 4th DCA 2000) (holding that it is the responsibility of the insured who breached the policy to move to abate or dismiss). Once Curran filed her lawsuit, State Farm was denied its rights under the CME clause and the no-action clause. At that point, the damage had been done, and it is clear that State Farm was not obligated to do anything more than invoke its rights under the policy. I do not think State Farm should be faulted for consistently invoking its contract rights against a party who has consistently violated those rights.
Moreover, if Curran wanted an opportunity to belatedly comply, she should be the one to dismiss her lawsuit. Curran is the one who breached the policy provisions and she is the one who wrongly filed the suit; accordingly, it should be her responsibility to resolve those matters. Implying that State Farm should have done it for her sets a very bad precedent that will be viewed as an invitation to other insureds to violate examination and no-action clauses and improperly sue the insurer. Under the majority's view, if the insurer does not have the improperly filed action abated, the insured will get the policy benefits; and if the insurer does seek and obtain the abatement, the insured may belatedly comply and get the policy benefits. Either way, aberrant insureds will suffer no consequence for their wrongful conduct.

Conclusion
I find it very troubling that State Farm has never had the opportunity to address the issues and arguments raised in the majority opinion. The only issue raised by the parties and addressed by them in the trial court and in these proceedings is whether Curran refused to attend the scheduled examinations.
I also find it very troubling that the majority opinion concludes that Curran's breaches are inconsequential. What the majority is actually saying is that the rights State Farm had under the contract are of little consequence because they may in essence be trumped by a rule of civil procedure and an abatement procedure that Curran never even attempted to utilize. State Farm came to this court seeking its rights under the policy and it received, instead, a ruling that renders those rights nothing but meaningless words on a useless piece of paper.
When Curran entered into her contract of insurance with State Farm, she specifically agreed to be examined by physicians chosen by State Farm as often as it may reasonably require. She also agreed that she would not file suit against State Farm until she complied with that requirement. She willfully and materially breached both agreements because she was not interested in obtaining what she bargained for under the policy. She had her eye on a much bigger prize: a bad faith action against State Farm and the chance to recover more than any entitlement she had under her policy.
*832 What I find remarkable about the majority opinion is its conclusion that any prejudice to State Farm is inconsequential when it is clear that Curran's willful breaches of the policy prevented State Farm from properly investigating her claim, denied it the right to settle the case prior to suit, put State Farm through a completely unnecessary trial and appeal, and now places State Farm in the position of facing an inevitable bad-faith action. That is more than sufficient harm and prejudice to an insurer to cause an insured to lose her right to recover under the policy, and that is why the courts in Florida and elsewhere adopt the view that breach of an examination clause precludes the right to recover under the policy without any further showing of prejudice. "[I]t is just as reprehensible for an insured to fail to deal fairly with the insurer as it is for the insurer not to deal fairly with the insured.... [A]n insured[] cannot manipulate the law to create a sword for bad faith damages." Blue Diamond, Inc. v. Liberty Mut. Ins. Co., 21 F.Supp.2d 631, 637 (S.D.Miss.1998).
In any event, if prejudice is an issue, once the breach of the examination requirement was established, pursuant to Macias, the burden was on Curran to establish a lack of prejudice, and it is clear based on the harm she caused State Farm that she could not meet that burden. That is obviously why she did not raise that argument in these proceedings. I believe that the prejudice standard adopted in Macias is by far the better reasoned approach when compared to the new prejudice rule adopted by the majority. Under Macias, Curran should be denied recovery because she did not and could not meet her burden of establishing lack of prejudice to State Farm.
Perhaps some may conclude that the blame for the wrongful conduct lies with Curran's lawyer. However, as a party to the insurance contract, Curran knew or should have known that the contract specifically obligated her to attend the scheduled examinations and it is difficult to imagine that her lawyer did not consult with her about her scheduled examination appointments. In any event, regardless of what Curran knew or should have known, she hired the lawyer and placed him in the position to do what he did and she is ultimately responsible for his actions. Therefore, if Curran believes that someone other than herself is at fault, her remedy is against her lawyer, not State Farm.
Litigation is not a game of tricks and traps where clever litigants and their lawyers break contractual promises to achieve an unjust victory against an opponent intent on complying with its contractual promises. That sort of gamesmanship is anathema to all involved in the legal system who seek the truth by means of rules promulgated to achieve justice through fairness. When aberrant litigants and their lawyers get away with the spoils of that type of victory, it cheapens the currency of those rules, gives encouragement to others to do the same, and lends credence to the cynics who say that such practice is endemic to the legal system. Here, the majority acknowledges the bad faith action Curran has created for herself and so the majority makes it a point to say that its decision does not mean that Curran's wrongful conduct "cannot be considered in the context of any subsequent action for bad faith." Despite the majority's acknowledgment of the inevitable bad faith action that will soon follow and the majority's recognition that what Curran did was wrong, rather than condemn her conduct, the majority declares it inconsequential, orders that State Farm pay her attorney's fees and awards her full recovery under the policy. The final result of the majority's ruling is that the only party that willfully *833 and materially breached the policy walks away with the policy limits of $100,000 and a chance to litigate a bad faith claim, her lawyer walks away with his fees fully paid, and the party that foots the bill for their wrongful conduct is State Farm, who is the only party that tried to fulfill its commitments and exercise its rights under the policy. This is the sort of unjust outcome that the decisions in Goldman and De Ferrari attempt to prevent by holding wrongdoers who willfully and materially breach insurance contracts accountable for their conduct. Even under Macias, Curran failed to meet her burden of establishing that State Farm was not prejudiced by her wrongful conduct. I firmly believe that those decisions dictate the proper outcome here. I also believe that it is time to put a stop to this sort of gamesmanship in legal proceedings.
PALMER, J., dissenting.
I respectfully dissent.
Curran's refusal to comply with the policy provision requiring her to attend a scheduled CME constituted a failure to comply with the following condition precedent to suit set forth in her insurance policy: "There is no right of action against [State Farm] until all terms of this policy have been met...." The original panel decision succinctly explained why reversal in favor of State Farm was the correct result:
The policy specifically provides in pertinent part that "[a]ny person making claim ... under the ... uninsured motor vehicle and death, dismemberment and loss of sight coverages shall ... be examined by physicians chosen and paid by us as often as we reasonably may require...." State Farm is correct that compliance with this policy provision is a condition precedent to suit and recovery of policy benefits. See De Ferrari v. Gov't Emps. Ins. Co., 613 So.2d 101, 102 (Fla. 3d DCA) (affirming summary judgment in favor of insurance company in a suit to recover UM benefits; concluding that the insured failed to comply with a condition precedent in the policy requiring that "[t]he injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require" and that the insurance company did not have to show that it was prejudiced by the noncompliance), review denied, 620 So.2d 760 (Fla. 1993); see also Kazouris v. Gov't Emps. Ins. Co., 706 So.2d 960, 960 (Fla. 5th DCA 1998) (specifically adopting the analysis in De Ferrari to resolve the issue "whether the insurer can insist on an independent medical examination when the insured makes a claim under uninsured motorist coverage."); Goldman v. State Farm Gen. Fire Ins. Co., 660 So.2d 300 (Fla. 4th DCA 1995), review denied, 670 So.2d 938 (Fla.1996); Stringer v. Fireman's Fund Ins. Co., 622 So.2d 145, 146 (Fla. 3d DCA 1993).
State Farm Mut. Auto. Ins. Co. v. Curran, 36 Fla. L. Weekly D195 (Fla. 5th DCA Jan. 28, 2011). I disagree with the majority's conclusions that Kazouris was not a wholesale endorsement of the holding in De Ferrari, and that this court should recede from Kazouris and certify conflict with the well-reasoned decisions of the Third and Fourth Districts in De Ferrari and Goldman. Accordingly, I would reverse the judgment entered in favor of Curran and remand this matter to the trial court with instructions to enter judgment in favor of State Farm.
NOTES
[1] We may affirm the trial court under the "tipsy coachman" doctrine even where the lower court's reasoning is incorrect or where the basis of our affirmance was not argued. Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 645 (Fla.1999).
[2] Although these orders were appealed, we cannot address them because they are not final.
[3] State Farm had never intimated that Curran could not bring counsel or a court reporter. It is not necessary that an insurer anticipate the insured's requests and expressly address them in scheduling an examination. Nor is it necessary that the insurer provide an advance script for the CME. It is fair to assume that a licensed physician will conduct a professional examination. Therefore, Curran's request for a "detailed list of any and all examination procedures and processes that Dr. Uricchio intends to perform at this examination be provided prior to the examination," while seemingly benign, was not a condition that the insurer was required to meet and was unduly burdensome. An insurer can schedule the CME upon reasonable notice based on the availability of its chosen doctor. The insured certainly may propose an alternative date that is more convenient for the insured, but, if an irreconcilable dispute arises, provided that the date and time chosen by the insurer is reasonable, the insured must attend the CME. If the insured makes the insurer aware of facts that bear on the reasonableness of the insurer's request, the insurer should take those additional facts into account. For example, if the insurer is made aware that the insured is hospitalized, a request for an examination at a different location might be unreasonable. In this case, the insurer went beyond its contractual obligation in trying to coordinate a date and rescheduling the date on fairly short notice based on the unexplained "unavailability" of Curran.
[4] The cooperation clause of the policy requires the insured to cooperate with the insurer in "securing and giving evidence," among other things.
[5] Even had this insurance contract provided for the forfeiture of insurance benefits for failure to attend a CME, absent statutory authorization, the forfeiture provision would probably constitute an unenforceable penalty, because the stated damages would have no correlation to the gravity of the wrong. See Crosby Forrest Prods., Inc. v. Byers, 623 So.2d 565, 567 (Fla. 5th DCA 1993) (penalty provision in contract unenforceable). It would be anomalous indeed to impose a forfeiture of benefits where, as here, no forfeiture provision is contained in the contract and when a contractual stipulation imposing the same forfeiture would be unenforceable.
[6] The text of the policy provides:

2. Suit Against Us
There is no right of action against us
a. until all terms of this policy have been met and
....
c. under ... uninsured motor vehicle... coverages until 30 days after we get the insured's notice of accident or loss.
[7] The same contract section prohibits the insured from filing suit within thirty days of the insurer's receipt of notice of accident or loss. If the insurer makes no request for a CME, the insured is free to file suit after expiration of this thirty-day period.
[8] Griffin might have been based upon the 1975 version of the PIP statute, which did not contain the forfeiture language. That language was added to the statute in 1976, before Griffin was decided. We are unable to tell which version of the statute was relied upon by the court.
[9] An insured should not have to risk entitlement to all benefits by challenging, in good faith, the reasonableness of the insurer's request for a CME. Should a court's hindsight view differ from the insured's, provided that no prejudice results, the better approach is to require the insured to attend the CME. See, e.g., Wapnick v. State Farm Mut. Auto. Ins. Co., 54 So.3d 1065 (Fla. 4th DCA 2011) (where insured contested location for CME and trial court settled dispute in favor of insurer, proper remedy to order insured to submit to CME in place designated).
[10] Although this offer was also similarly conditioned, in the context of a rule 1.360 examination, either party may request "protective rules" and the trial judge has the authority to resolve any disputes. Fla. R. Civ. P. 1.360(a)(3). State Farm's election to defer the examination was based on its desire to obtain a definitive ruling on coverage, not on any objection to the conditions for a rule 1.360 examination.
[11] What I find very troubling about the majority opinion is that it does not consider the breach of an examination clause to be a material breach, when the courts have repeatedly held that it is. Remarkably, the majority considers Curran's willful breach analogous to inconsequential breaches such as the failure to report an accident within 24 hours or to deliver suit papers at once. To minimize what Curran did in this case by employing that kind of analogous reasoning eviscerates the rights of insurance companies to properly investigate claims and encourages other aberrant claimants to engage in the same type of conduct.
[12] The majority asserts that a hearing under rule 1.360 allows the trial court to determine the conditions under which the IME will be taken. What the majority is actually contending is that the trial court could determine, when ordering an IME under the rule, the propriety of the provision in the CME clause that allows the insurer to request CMEs as often as it may reasonably require. This provision is inserted in policies to allow further examinations of the insured in instances where the doctor conducting the first examination concludes that further examinations, for example by other doctors that specialize in specific areas of medicine, are necessary to accurately determine the injuries and their cause. Certainly courts may determine whether a second or third request for examination is reasonable or necessary. However, to suggest that the trial court could eliminate that provision from the contract when ordering the first IME under rule 1.360 suggests improper rewriting of the contract by the court that is prohibited.
[13] The majority opinion quotes from Custer Medical Center v. United Automobile Insurance Co., 62 So.3d 1086 (Fla.2010), and asserts that the court held that "[a] CME provision is a `condition subsequent' the non-occurrence of which is an affirmative defense that the insurer has the burden to plead and prove." That is not what the Custer court said or meant. The court in Custer discussed the forfeiture provisions in the PIP statute, which provide that "[i]f a person unreasonably refuses to submit to an examination, the personal injury protection carrier is no longer liable for subsequent personal injury protection benefits." Id. at 1096 (emphasis in original) (quoting § 627.736(7)(b), Fla. Stat. (2001)). The court explained that this statutory requirement is not a condition precedent to the existence of the policy; rather, it is a condition precedent to the recovery of subsequent benefits under the policy. The court further explained that breach of the examination requirement did not eliminate the right of the insured to receive payments the insured was entitled to prior to the breach. The court stated that its prior decision in U.S. Security Insurance Co. v. Cimino, 754 So.2d 697 (Fla.2000), correctly held that "attendance at a PIP medical examination is a condition precedent to the receipt of subsequent PIP benefits...." Custer, 62 So.3d at 1099. The court further explained that "when the parties . . . dispute attendance at a medical examination, neither ... is contesting the policy's existence...." Id. (emphasis in original). Rather, the parties "are simply in a dispute with regard to the insured's continued right to receive subsequent PIP benefits under an existing insurance policy." Id. (emphasis in original). The discussion referred to by the majority related solely to the specific provisions of the PIP statute, which are conditions precedent to recovery under the policy. In any event, the discussion in Custer does not pertain to contractual provisions in a policy similar to those at issue in the instant case, and to attempt to extend that discussion to contractual provisions is an extraordinary stretch. I, therefore, totally reject the notion espoused by the majority that Custer holds that attendance at a CME under the policy provisions is a condition subsequent that triggers a prejudice analysis.
[14] The majority contends that Griffin might have been based on the 1976 version of the PIP statute, which contained the forfeiture provision. That is simply wrong. In Custer Medical Center v. United Automobile Insurance Co., 62 So.3d 1086, 1091 (Fla.2010), the court stated, "In Griffin, the Third District considered the 1975 version of the PIP statute, which did not include the `unreasonable refusal' provision, and held that an insured's failure to comply with the condition precedent of attendance at a medical examination constituted grounds to enter judgment for the insurer."